420 A.2d 746

**Paul W. HERWIG**

v.

**Natalie M. HERWIG, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed June 27, 1980.

Petition for Allowance of Appeal Denied Oct. 29, 1980.

Norma Chase, Pittsburgh, for appellant.

Blair J. Harkett, McKeesport, for appellee.

Before SPAETH, VAN der VOORT and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the Order of the Court of Common Pleas of Allegheny County, Family Division, by the wife–appellant, Natalie M. Herwig. The lower court order granted the husband–appellee a divorce on the grounds of desertion.

The parties were married in 1958. Appellant testified that she left the marital abode on April 9, 1971. Appellee testified that she left on Good Friday of 1970. In either case it is undisputed that the wife removed herself from the marital abode. The only question on appeal is whether she was justified in doing so.

After their marriage the parties lived together for about a year and a half. From 1960 to 1970 the appellant spent most of her time living with her mother or brother. She would only come home on occasion. The appellee testified that the appellant resided with him for only about one and one–half years during the ten year period from 1960–1970. Appellee worked as a truck driver during this period and

although appellant had asked him to come to live with her mother appellee refused stating that it would interfere with his job.

Early in 1970, the appellee had a disabling stroke and appellant returned home to care for him, bringing her invalid brother to reside with them. (Her mother had passed away.) According to appellee's testimony the appellant left the abode on Good Friday, 1970 taking her brother with her. Although her brother died shortly thereafter, she refused to return to appellee and on September 16, 1975, the appellee filed an action in divorce against her. On August 11, 1977, the Master's Hearing was held and on June 30, 1978 the court below, accepting the Master's recommendation, granted the divorce. Appellee died on September 19, 1978, subsequent to the time of the filing of this appeal. However, the determination of property interest prevents mootness.

It was also established that on the day appellant left appellee he had informed her that he had fathered an illegitimate child in 1939 which fact he had never revealed to her previously. Appellee also testified that he had called his wife on several occasions and had attempted to get her to reconcile with him but had been rebuffed by her.

The appellant presented testimony to the effect that she and appellee had a good marriage, that she only went to live with her mother for eight months in 1964 until her mother died, that after that time the only time that she went to live with her relatives in Pittsburgh was when her husband would tell her to go back to Pittsburgh. She also testified that he would go to Florida to visit his mother several times a year and would stay for a week or two at a time and that much of his time was taken up by his Legion activities. Regarding the incident that resulted in the separation, the appellant testified that it occurred in April of 1971 after the appellee had told her of his illegitimate child for the first time and had also told her that "it would be better if she didn't live in his house anymore and that she would never be his wife". She went on to testify that if she didn't go that he would get rid of her "in another way" and that he said he was "tampering with the car, with the brakes". She stated

that she didn't want to leave but that she "had to" and that he never had asked her to return to him. She further testified that after the separation, it was she who attempted to reconcile with appellee and that he always had "some excuse" as to why a reconciliation could not work and that he had changed the locks on his house so that she couldn't get back into the house on her own. No children were born of this marriage and both parties were employed throughout the course of the marriage.

Desertion, as set forth in *23 P.S. § 10(1)(d)*, is recognized as a grounds for divorce. If the offending party "shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years" then that party is guilty of the offense of "desertion". It is clear that in the instant case the appellant had absented herself from her husband's home for more than two years. The only issue is whether her absence was "without reasonable cause". Where one party to a marriage departs from the habitation of the other and absents herself therefrom for a period of two years the party who left the marital abode has the burden of proving reasonable cause for her departure and absence in a divorce action brought against her on the grounds of desertion. *Zimmerman v. Zimmerman*, 428 Pa. 118, 236 A.2d 785 (1968). Reasonable cause which justifies one spouse leaving the habitation of the other is that which would entitle the separating party to a divorce. *Hughes v. Hughes*, 196 Pa.Super. 144, 173 A.2d 700 (1961). However, a wife's withdrawal from the marital home does not become wilful and malicious desertion where the husband consents to or encourages the separation. *Bench v. Bench*, 199 Pa.Super. 405, 185 A.2d 664 (1962).

In the instant case, the appellee testified that his wife left him when she became angry over the fact that he admitted to her that he had fathered an illegitimate child 19 years prior to their marriage.

The fact that a husband fathered an illegitimate child some nineteen years prior to his marriage to the

defendant is not reasonable cause for his wife to absent herself from the marital domicile and if she does so for a period of two years her absence is deemed to be willfull and malicious and she is guilty of desertion. See *Travis v. Travis*, 183 Pa.Super. 273, 130 A.2d 724 (1957). However, appellant testified that her husband encouraged her to leave the marital domicile by telling her that he did not consider her to be his real wife and by threatening to get rid of her "in another way". If true, this fact would constitute reasonable cause for appellant to leave appellee. The appellant denied that he told or encouraged his wife to leave, although he admitted it was possible that his affections had changed completely towards her. Both parties testified that it was they who had attempted to reconcile with the other but that they had been rebuffed by the other in these attempts. Thus, we are presented the issue of credibility.

A Master's Report in a divorce action, although advisory only is to be given fullest consideration, particularly on the issue of credibility of witnesses. *Margolis v. Margolis*, 201 Pa.Super. 129, 192 A.2d 228 (1963). This is so because it is the master who had the opportunity to observe the demeanor of the witnesses and the parties. However, in a divorce action we are to make an independent review of the record and to consider the evidence de novo, pass on its weight and on the credibility of witnesses, and reach an independent conclusion on the merit. *Rankin v. Rankin*, 181 Pa.Super. 414, 124 A.2d 639 (1956). In reviewing the record we must sedulously examine and weigh the testimony to discover inherent improbabilities in stories of witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, potent falsehood and other factors by which credibility may be ascertained. *Rankin v. Rankin*, supra.

The determination of this case depends upon the credibility of the parties. In this regard we give weight to the determination of credibility by the Master who saw the parties, heard their testimony and observed their individual demeanors.

The court below held:

"After reviewing extensively the testimony of all of the parties, and after having made an independent investigation of the evidence, *de novo*, we see no reason to disturb or disagree with the findings and conclusions of the Master regarding the credibility of witnesses, and, therefore, accept his assessment of the weight to be given the testimony adduced at the hearing. *Sacavitch v. Sacavitch,* 206 Pa.Super. 229, 212 A.2d 926 (1965); *Nichols v. Nichols,* 207 Pa.Super. 220, 217 A.2d 807 (1966)."

After careful review of the evidence, de novo, we find no reason to disagree with the determination of the court below.

Order affirmed.