551 A.2d 219

**Catherine E. Walsh SIMEONE, Appellant,**

v.

**Frederick A. SIMEONE.**

Superior Court of Pennsylvania.

Argued Sept. 1, 1988.

Filed Oct. 26, 1988.

Reargument Denied Dec. 22, 1988.

38

Leonard Dubin, Philadelphia, for appellant.

Robert I. Whitelaw, Philadelphia, for appellee.

Before CAVANAUGH, BROSKY and MONTEMURO, JJ.

BROSKY, Judge:

This is an appeal from the Order of the Court of Common Pleas of Philadelphia County denying appellant's Exceptions to the Recommendation by the Master that the 1975 antenuptial agreement is valid and enforceable, and is a bar to appellant's receipt of alimony pendente lite.

Appellant presents the following issues for our review: (1) whether the antenuptial agreement is rendered void

when appellant lacked an awareness of the statutory rights she relinquished upon its execution; (2) whether the antenuptial agreement is void when appellant lacked independent counsel and alleges that the agreement was signed under duress; (3) whether there was an adequate financial disclosure to ensure the validity of the antenuptial agreement; and (4) whether the antenuptial agreement was superceded by the parties' handwritten separation agreement dated February 1, 1982.

The trial court answered these questions in the negative. We now affirm the trial court's decision.

Catherine E. Walsh Simeone ("Appellant") and Dr. Frederick A. Simeone ("Appellee") were married on October 4, 1975. The day before they were to marry, appellant signed an antenuptial agreement prepared by appellee's attorney, limiting appellant's alimony in the event of divorce to $25,-000.00, payable in the amount of $200.00 per week. The parties separated in February of 1982. Subsequent to their separation, the parties executed a handwritten separation agreement, providing temporary support for appellant and the parties' only child, Christina, now age eleven. In July of 1984, appellee reduced his payments to appellant to cover child support expenses only, and appellant filed a Complaint for support.

A Master's hearing was held, and the Master found that the separation agreement did not supercede the provisions of the antenuptial agreement with respect to appellant's right to alimony pendente lite. The Master fixed appellee's child support obligations at $1,627.00 per month. The Master's Report was filed on April 1, 1985, and later became an Order of the Court. No Exceptions were filed to the Master's Report. On April 3, 1985, appellant filed a Petition seeking alimony pendente lite. A Master was appointed, and a Master's hearing was held to determine the issues of the validity of the antenuptial agreement and appellant's right to alimony pendente lite based upon her potential income and expenses. The Master found that the parties' antenuptial agreement was valid and binding, and that

appellant was not entitled to alimony pendente lite. Appellant filed Exceptions, which were dismissed by the trial court. Appellant has appealed.

Appellant contends, first, that the antenuptial agreement is void because she was not aware of the statutory rights which she relinquished when she executed it. She claims that the attorney who drafted the agreement represented only appellee, and never discussed or explained the contents of the agreement with her before she signed it.

In *In Re Estate of Geyer*, 516 Pa. 492, 533 A.2d 423 (1987) the Pennsylvania Supreme Court dealt with the issue of the enforceability of an antenuptial agreement. There, the court began by reiterating the already-established law in this area. In doing so, the court quoted extensively from *In re Hillegass Estate*, 431 Pa. 144, 244 A.2d 672 (1968), which was the leading decision in this Commonwealth concerning the interpretation of antenuptial agreements.

■ The pertinent language quoted by the *Geyer* court is as follows:

> Parties to an antenuptial Agreement providing for the disposition of their respective estates do not deal at arm's length, but stand in a relation of mutual confidence and trust that calls for the highest degree of good faith and a reasonable provision for the surviving spouse, *or* in the absence of such a provision a full and fair disclosure of all pertinent facts and circumstances.

*Id.*, 431 Pa. at 149, 244 A.2d at 675.

. . . . .

After announcing these standards the Court set forth the following principles.

(1) An Antenuptial Agreement is presumptively valid and binding upon the parties thereto.

(2) *The person seeking to nullify* or avoid or circumvent the Agreement has the burden of proving the invalidity of the Agreement by clear and convincing evidence that the deceased spouse at the time of the Agreement made *neither* (a) *a reasonable provision for the intend-*

ed spouse, nor (b) *a full and fair disclosure of* his (or her) worth. (emphasis in original).

*Geyer, supra,* 516 Pa. at 501, 533 A.2d at 427. The court then went on to explain the burden of proof as follows:

The burden in the case was on Mrs. Geyer to demonstrate by clear and convincing evidence that the agreement did not make reasonable provision for her, *and* that it was entered into without full and fair disclosure by the decedent.*

---

* We note that the Superior Court read *Hillegass* as requiring an antenuptial agreement to make reasonable provision *and* to be entered into after full and fair disclosure. This was a misreading of *Hillegass* which provides that an agreement can survive if *either* (but not necessarily both) of these requirements is satisfied. *See In re Estate of Kester,* 486 Pa. 349, 353 n. 4, 405 A.2d 1244, 1246 n. 4 (1979).

*Id.,* 516 Pa. at 502, 533 A.2d at 427.

■ Had the Supreme Court stopped there, the holding would be clear: antenuptial agreements are valid as long as there is either a reasonable provision for the intended spouse *or* full and fair disclosure of assets. Confusion arises, however, by the court's use of the following language:

That public policy, a token of the solemnity of the matrimonial union, requires no less than a condition that any agreement surrendering the right of a spouse to elect against the will must be made under full knowledge of that right.

We therefore think it is fair and reasonable, as well as sound judicial policy, to require that any agreement which seeks to change the duly enacted public policy of this Commonwealth must be based on nothing less than full and fair disclosure. Such disclosure must include both the general financial pictures of the parties involved, and evidence that the parties are aware of the statutory rights which they are relinquishing.

*Id.,* 516 Pa. at 506, 533 A.2d at 429–30.

Not only does this appear to add a new requirement on to the concept of "full and fair disclosure"—that being the full and fair disclosure of statutory rights—but it would also

appear to require full and fair disclosure *regardless* of the reasonableness of the provision for the intended spouse, a holding which would run contrary to the language initially used by the court when quoting *Hillegass, supra.*

To try to resolve this confusion, we turn first to the Dissenting Opinion by Chief Justice Nix. There, he states:

The Opinion Announcing the Judgment of the Court would make full and fair disclosure a requirement in every antenuptial agreement. This new disclosure would require not only a general statement of the financial resources of the parties, but also would require that the complaining party must have been made "aware of the statutory rights which [he or she is] relinquishing." Slip op. at 429.

*Geyer, supra,* 516 Pa. at 430, 533 A.2d at 430. Because we can find no language to the contrary, we must agree that the Supreme Court has, indeed, expanded the concept of full and fair disclosure to encompass, not only disclosure of assets, but also, disclosure of statutory rights.

■ The dissent by the Chief Justice, however, goes on to state that the majority is making full and fair disclosure a requirement even in the presence of a reasonable provision. Chief Justice Nix states it thusly:

Under present law, full and fair disclosure is not required until it is first determined by a reviewing court that the provision for the surviving spouse under the antenuptial agreement was not adequate.

.     .     .     .     .

Today the Opinion Announcing the Judgment of the Court would place the burden upon the proponent of the agreement to establish its validity by demonstrating that the disclosure requirement has been met, regardless of the adequacy of the provision being made of the surviving spouse.

*Id.,* 516 Pa. at 508, 533 A.2d at 430–31. We however, disagree. As noted earlier, the majority in *Geyer first* set forth the rules announced in *Hillegass* as still being control-

ling, and *later* spoke of full disclosure. Thus, we must reconcile these seemingly divergent stands.

As pointed out by appellee, it was only *after* the Court found that there had not been a reasonable provision made for the dependent spouse, that they had to address the issue of disclosure.[1]

We interpret *Geyer* this way based upon additional language used by the Supreme Court which states:

Antenuptial agreements which are knowingly and intentionally executed should not be abrogated. Unreasonable conditions or consequences may prove that an agreement was not knowingly entered into; but absent that lack of knowledge the surviving party should be required to live with the bargain. Nonetheless, in order to enforce such an agreement a court should be convinced that the agreement in question was in fact made knowingly and intentionally.

*Id.*, 516 Pa. at 429, 533 A.2d at 429. As evidenced by this passage, it is only where unreasonable conditions exist that the lack of knowledge becomes important. Further, where the court talks about "enforcing[ing] *such* an agreement" (emphasis added), taken in context, we interpret this to mean an agreement in which the provisions for the spouse were unreasonable. Additionally, when the Supreme Court spoke of "agreement[s] which seek to change duly enacted public policy" supra at 221, we believe that this is a reference to agreements in which unreasonable provisions are given to a spouse, thereby contravening the public policy of fairness.

Accordingly, our interpretation of *Geyer* is as follows: (1) the concept of "full and fair disclosure" was expanded to include the disclosure of statutory rights; and (2) the *Hillegass* holding that antenuptial agreements are valid in the

---

1. As stated earlier, Mrs. Geyer had to prove *both* for, under *Hillegass*, had reasonable provision been made, the one prong for validity of the antenuptial agreement would have been met. Likewise, had there been full disclosure, there would have been no need to discuss reasonableness. But, in order to prove *invalidity*, both "prongs" must be absent.

presence of *either* full and fair disclosure or a reasonable provision for the intended spouse remains unchanged. Thus, we will analyze appellant's claims in light of this interpretation.

■ We will begin our analysis by looking first at the reasonableness of the provisions made for appellant in the antenuptial agreement. In *Hillegass,* supra, the Pennsylvania Supreme Court set forth the standard to be used in evaluating reasonableness.[2]

> In evaluating the reasonableness of the provision for the survivor, such reasonableness must be determined *as of the time of the Agreement* and not by hindsight. *Reasonableness* will depend upon the totality of all the facts and circumstance *at the time of the Agreement,* including (a) the financial worth of the intended husband; (b) the financial status of the intended wife; (c) the age of the parties; (d) the number of children each has; (e) the intelligence of the parties; (f) whether the survivor aided in the accumulation of the wealth of the deceased spouse; and (g) the standard of living which the survivor had before marriage and could reasonably expect to have during marriage.

*Id.* 431 Pa. at 150–151, 244 A.2d at 675–676 (emphasis in original). In *Geyer, supra,* the court held, "(I)n reviewing the issue we are guided by the principle that the adequacy of the agreement's provisions is to be measured by the terms of the agreement itself, not by events which occurred subsequent to it." *Id.,* 516 Pa. at 503, 533 A.2d at 428. Furthermore, reasonableness will depend upon the totality of all the facts and circumstances at the time of the agreement, and not by hindsight. See *In re Kester's Estate,* 486 Pa. 349, 405 A.2d 1244 (1979).

It is true that this concept of reasonableness is viewed somewhat differently in other states. In *Posner v. Posner,* 233 So.2d 381 (Supreme Court of Florida, 1970), the court

---

**2.** We note that although *Hillegass* dealt with an estate as opposed to a divorce for the purpose of establishing the standards for reasonableness, we find this distinction not to warrant a different holding.

upheld an antenuptial agreement; however, the court went on to state that, with regard to the provision limiting alimony, it would permit the alimony to be changed upon a showing of changed circumstances. In *McHugh v. McHugh*, 181 Conn. 482, 436 A.2d 8 (1980), the court stated that an antenuptial contract may be invalid where the parties' circumstances changed greatly between the time of the execution of the agreement and the parties' separation. Likewise, in *Newman v. Newman*, 653 P.2d 728 (1982), the Supreme Court of Colorado, although acknowledging that the parties to an antenuptial agreement are, indeed, free to enter into a contract, also recognized that health and employability of the spouses may change during marriage, so as to render unconscionable an antenuptial agreement. A more stringent stand was taken in *In Re Marriage of Winegard*, 278 N.W.2d 505 (1979) when the Supreme Court of Iowa held that parties cannot limit alimony in an antenuptial agreement.

Such is not the case in Pennsylvania. In *Laub v. Laub*, 351 Pa.Super. 110, 505 A.2d 290 (1986), this court upheld an antenuptial agreement in which the parties relinquished their rights to alimony and support. In *Laub*, we also held that under Section 103 of the Divorce Code of 1980, agreements entered into prior to the effective date of the act, would not be affected by the act nor any modification or amendment thereto. This is important as appellant claims that she was not informed of her statutory rights; however, it was not until the Divorce Act of 1980 that many of her rights arose.

The trial court, in its opinion, analyzed this case in light of the *Hillegass* factors for reasonableness as follows:

Dr. Simeone's assets set forth in the agreement as itemized on schedule A attached thereto, are valued at approximately $300,000. Included in the assets is the automobile collection of 17 cars with an approximate value of $200,000, and the balance of the assets were $83,550 plus the automobile literature valued on the schedule at approximately $20,000–50,000. The defendant also inserted

his approximate net income for 1974 at $84,000 and 1975 of $90,000.

It is noteworthy that defendant testified that at the time of execution he owned only 4 of the 17 automobiles listed on schedule A. The other automobiles were owned by his mother, who inherited the cars from her husband, who died in 1971 (1/13/86, NT 10–18). This fact was known by plaintiff.

Furthermore, at the time of execution of the agreement, plaintiff was a 23–year–old registered nurse, while defendant was a 39–year–old neurosurgeon. Paragraph 2 provided for the plaintiff to inherit $100,000 of defendant's assets in the event of his death if the parties were living together as husband and wife. Even assuming that defendant owned all of the automobiles, plaintiff would receive at least ⅓ of defendant's estate, which is equivalent to her statutory share subject to the provisions of the PEF Code upon election. See 20 Pa.CS § 2203. If the 13 cars are excluded from the computation, plaintiff's share would exceed 50% of defendant's estate. Accordingly, the provision for plaintiff upon defendant's death is reasonable.

The support provision of the agreement in the event of divorce or separation give the plaintiff an allowance of $200 weekly, not to exceed $25,000. The Master found, as previously indicated, that plaintiff was a 23–year–old RN who was not working at the time of execution of the agreement due to injuries sustained in a motor vehicle accident. The defendant was a 39–year–old neurosurgeon who earned approximately $84,000 in 1974 and $90,-000 in 1975. Neither party had any children from previous marriages. The record discloses that plaintiff prior to marriage worked as an RN and supported herself. Accordingly, upon separation or divorce the plaintiff would receive $200 weekly for 125 weeks, placing her in a better position that she would have been prior to the parties' marriage. See *Emery Estate* [362 Pa. 142], 66 A.2d 262, 265 (Pa.1949).

In 1975, when the agreement was executed there was no post-divorce alimony in Pennsylvania. Despite defendant's significant earnings in later years, such earnings are not relevant to the determination of reasonableness of the support provision at the time of execution of the agreement. See *Geyer Estate, supra* [533 A.2d], at 428; *Hillegass Estate, supra* [244 A.2d] at 674. 1975 is the relevant time period to determine reasonableness. The Master found, and the court concurs, that the provisions for plaintiff in the event of death and divorce are reasonable within the guidelines of the appellate decisions interpreting prenuptial agreements. Furthermore, plaintiff has not presented clear and convincing evidence demonstrating that the provisions for her were not reasonable.

Finding no error in the trial court's analysis, we agree that the provisions for appellant were reasonable. Having found the antenuptial agreement to have made reasonable provision for appellant, we need not consider the issue regarding her statutory rights. (See Discussion of *Geyer,* supra.)

■ We turn now to appellant's second contention regarding the lack of counsel. Our resolution of this issue ties in with our previous discussion regarding appellant's statutory rights. We will, however, go further. This court recently addressed a similar issue in *Nigro v. Nigro,* 371 Pa.Super. 625, 538 A.2d 910 (1988). The court found that when an antenuptial agreement makes reasonable provisions for a spouse, or contains full and fair disclosure, the court can find that a spouse who later contests the agreement "knowingly and voluntarily" waived her right to independent counsel, particularly when that spouse actively participated in formulating the provisions of the agreement. This implies that there is a right to independent counsel which is not absolute, and can be waived.

Here, the Master, on the basis of credibility, specifically found, and the trial court agreed, that appellant had full knowledge of the fact that an agreement was being drawn up, had participated in conversations regarding the agree-

ment, and had participated in the process of preparing the agreement. Appellee testified that he and appellant discussed the particulars of this antenuptial agreement, and that appellee had his attorney insert several changes in the agreement that were more favorable to appellant, at her request. Having known about the agreement for several months prior to the parties' wedding, appellant could have consulted with independent counsel prior to signing the agreement. Thus, even if appellant were not aware of the actual provisions of the agreement, having known that an agreement was a probability, it became a matter for appellant to protect her interests. It is true that in *Nigro, id.,* it was specifically found that the appellant-wife had knowingly and voluntarily waived her right to counsel by actively participating in the formulation of the agreement. While no such definitive finding may have been made here, we are nonetheless faced with a situation where the credible evidence shows that appellant did have an opportunity to seek counsel should she have so chosen. Therefore, unless appellant can prove either that the agreement did not reasonably provide for her and that appellee did not make a full and fair disclosure of his worth to her, the agreement will not be invalidated merely because appellant was not represented by independent counsel. Since appellant has not proved that the agreement was unreasonable appellant's lack of independent counsel is not dispositive.

█ Appellant also contends that the antenuptial agreement was signed under duress, and should therefore be void. She submits that duress can void an agreement even in the absence of threats of actual bodily harm, where a party is not "free to consult with counsel." *Carrier v. William Penn Broadcasting Corp.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967), *quoting, Smith v. Lenchner,* 204 Pa.Super. 500, 504, 205 A.2d 626, 628 (1964). Appellant also claims that she was presented with the agreement for the first time on the eve of her wedding, and she did not

understand her rights, and only signed the agreement because she believed that her wedding would not go forward unless she did so. She asserts that these facts constitute duress.

Several witnesses, however, testified that there were discussions of the antenuptial agreement between the parties long before the eve of the wedding, and the Master did not find appellant's claims with regard to this matter to be credible. Appellant's mother also testified that when appellant returned to her mother's home on the evening prior to the wedding, she made no mention of the antenuptial agreement. While we admit that appellee's timing in this regard may leave something to be desired, we believe that the Master did not abuse his discretion in not finding that the agreement was executed under duress.

Appellant asserts next that the antenuptial agreement is void because it was predicated upon insufficient financial disclosures. She claims that contrary to appellee's representations that his assets were valued at $300,000.00, mostly attributed to his antique car collection, her expert determined that the car collection, alone, was worth almost $400,000.00.

The Master specifically found that appellant's expert was not credible,[3] and concluded that there was a full and fair disclosure of appellee's assets to appellant in the antenuptial agreement. Furthermore, in *Geyer, supra,* the Pennsylvania Supreme Court determined that:

> The law is well settled that disclosure between parties need not be exact. Nevertheless disclosure must be "full and fair." [Citation omitted]. Disclosure may be impre-

---

3. A Master's Report in Pennsylvania, although advisory, is to be given the fullest consideration, particularly on the issue of credibility of witnesses. *Herwig v. Herwig,* 279 Pa.Super. 65, 420 A.2d 746, 748 (1980); *Fiorilli v. Fiorilli,* 202 Pa.Super. 529, 198 A.2d 369, 370 (1964). This is because the Master has the opportunity to observe and assess the behavior and demeanor of the parties. *Herwig, supra,* 420 A.2d at 748; *Fiorilli, supra,* 198 A.2d at 370.

cise only to the extent that it does not obscure the general financial resources of the parties.

*Geyer, supra,* 516 Pa. 502, 533 A.2d at 427. Considering the fact that appellee disclosed the value of not only the four cars he owned, but also the value of the cars his mother owned, which he expects to inherit upon her death, he did not obscure his financial position.

■■■ Appellant's final assertion is that the antenuptial agreement was superceded by the parties' handwritten separation agreement dated February 1, 1982. She contends that this agreement required appellee to "pay to support" her, and that this agreement would be "superceded by future agreements after advice of counsel." Appellant insists that this separation agreement clearly supercedes the antenuptial agreement, and that appellee's conduct, in paying more than the $25,000.00 specified in the antenuptial agreement, evinces his acknowledgement of his obligation to do so. *Z & L Lumber of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 502 A.2d 697 (1985).

The Master found that the parties' separation agreement was executed only to memorialize the date of separation, to set the date at which appellee could move back into the marital residence, and to fix temporary support for appellant and the parties' minor child while the parties' living arrangements were being settled. The trial court found that the separation agreement did not supercede the provisions in the antenuptial agreement. It is well settled that this court will defer to the order of the trial court, absent a clear abuse of discretion. *Commonwealth ex rel. Vona v. Stickley,* 287 Pa.Super. 296, 430 A.2d 293 (1981). There has been no such abuse of discretion.

Finding no abuse of discretion, we affirm the order in question.

ORDER AFFIRMED.

MONTEMURO, J., concurs in the result.