## Zegan v. Zegan

C.P. of Monroe County, nos. 172 DR 2004, 982 CV 2004.

*Erik J. Conrad,* for plaintiff.
*Donald M. Leeth,* for defendant.

WORTHINGTON, *J.,* November 4, 2005—Plaintiff, Arlene M. Zegan (Wife) and defendant, Alan G. Zegan (Husband) were married on September 5, 1981. Master's report, at 2. On February 10, 2004, Wife filed a complaint requesting a divorce pursuant to sections 3301(a)(6), 3301(c) and 3301(d) of the Pennsylvania Divorce Code. In her complaint, Wife also requested equitable distribution, alimony, alimony pendente lite, counsel fees, and costs and expenses. The parties filed affidavits of consent at the master's hearing.

Both parties and their respective counsel attended the master's hearing in front of Robert C. Lear, Esquire on March 28, 2005. The master filed a report and recommendations on May 2, 2005. Wife filed exceptions to the report on May 12, 2005. Wife filed a supporting brief on July 14, 2005. Husband filed a brief in opposition to Wife's exceptions on July 28, 2005. Wife's exceptions are now before us for disposition.

At the time of the hearing, Wife was 55 years of age and Husband was 59 years of age. Both parties had been married previously. N.T., at 11. Husband has two adult children from a previous marriage. *Id.* There was one child born of this marriage, Jenny Hellen Zegan, 20 years of age. *Id.*

Throughout the marriage, Husband was employed as a respiratory therapist at Bellevue Hospital. Report, at 12. Husband retired from Bellevue Hospital on Decem-

ber 31, 2002. N.T., at 129. He is currently employed part-time at Long Island College Hospital and, in 2004, he earned the sum of $27,345. Report, at 11. In addition, Husband's annual pension earnings are $54,742.58. *Id.*

During the parties' 22-year marriage, Wife engaged in part-time employment on a sporadic basis. Report, at 11. Since moving to Pennsylvania in 2001, Wife was employed as a part-time receptionist at a chiropractor's office for approximately six months. N.T., at 18. Wife earned $7 per hour and she worked approximately 15 hours per week. *Id.* From 1982 until 2001, Wife was employed by the Union City Parks and Recreation Bureau as a receptionist working between four to 15 hours per week. Report, at 12. From 1990 until the present, Wife's average annual salary was $5,000 or less. *Id.* Wife is currently unemployed.

The marital assets consist of the former marital residence located at R.R. 6 Box 6399B in Stroudsburg, Pennsylvania, which has a stipulated value of $149,000. Report, at 4. At the time of the hearing, the residence was encumbered by a mortgage that had a balance of $94,000, resulting in $55,000 of marital equity. *Id.* Husband retained a 2002 Ford Ranger valued at $11,965, and Wife retained a 1997 Ford Taurus worth $4,425. *Id.* at 4-5.

The parties have a Massachusetts Mutual Joint Annuity, which had a value of $66,206.56 as of March 31, 2005; an American National Insurance Company Joint Annuity, which had a value of $109,038.20 as of March 31, 2005; a Primerica IRA, which had a value of $2,499.76 as of December 31, 2004; a Primerica Roth IRA, which had a value of $3,882.08 as of December 1, 2004; and a Prudential Retirement Account, which had a balance of $29,445.91

as of December 14, 2004. Report, at 5. Wife also had a savings account worth $6,357, a checking account in the amount of $843.97, and a Citizen's Bank savings account worth approximately $25,000. *Id.* at 6.

Husband has a pension from the New York City Employees Retirement System by virtue of his employment with Bellevue Hospital. Report, at 5. The master found that the annual pension benefit, which was worth $54,742.58, was completely marital, and he recommended that it be divided on a 50-50 percent basis between the parties through a Qualified Domestic Relations Order. *Id.* at 15-16.

In his report, the master recommended that the remaining marital assets be allocated 55 percent to Wife and 45 percent to Husband, since there was a significant disparity between the parties' incomes. Report, at 13-14. As a result, Wife was awarded $184,077.41 and Husband was awarded $130,586.07. *Id.* Wife received the marital residence, the Citizen's Bank savings account, the two IRAs, her savings and checking accounts, the assignment of the Massachusetts Mutual Joint Annuity, and a portion of the Prudential Retirement Account pursuant to a Qualified Domestic Relations Order. *Id.* at 15. Additionally, Wife was awarded rehabilitative alimony in the amount of $300 per month for the duration of one year. *Id.* at 18. Husband retained the American National Joint Annuity and the balance of the Prudential Retirement Account. *Id.* at 15.

When we review the recommendations of the master, they are entitled to great consideration because the credibility of the witnesses is an issue. *Herwig v. Herwig,* 279 Pa. Super. 65, 420 A.2d 746 (1980). However, those

findings are not binding on the court. *Butler v. Butler,* 423 Pa. Super. 530, 621 A.2d 659 (1993). If the court feels it should deviate from a recommendation, it has authority to do so, *Morschhauser v. Morschhauser,* 357 Pa. Super. 339, 516 A.2d 10 (1986), because the final responsibility for making the equitable distribution of property rests with the court. *Tagnani v. Tagnani,* 439 Pa. Super. 596, 654 A.2d 1136 (1995). We will, however, affirm the master if the recommendations are supported by the record. Furthermore, equitable distribution need not be equal, only equitable. *Williamson v. Williamson,* 402 Pa. Super. 276, 586 A.2d 967 (1991).

Section 3502 of the Divorce Code sets forth the factors to be considered by the master in any equitable distribution. The section states in pertinent part:

"(a) General rule.—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

"(1) The length of the marriage.

"(2) Any prior marriage of either party.

"(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

"(4) The contribution by one party to the education, training or increased earning power of the other party.

"(5) The opportunity of each party for future acquisitions of capital assets and income.

"(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

"(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

"(8) The value of the property set apart to each party.

"(9) The standard of living of the parties established during the marriage.

"(10) The economic circumstances of each party at the time the division of property is to become effective.

"(10.1) The federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

"(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

"(11) Whether the party will be serving as the custodian of any dependent minor children." 23 Pa.C.S. §3502. With these standards in mind, we turn to Wife's exceptions.

## WIFE'S EXCEPTIONS TO THE REPORT

Wife's first and second exceptions consider the master's decision to apply different percentages to certain marital assets. In her first exception, Wife argues

that the master erred in not awarding her 55 percent of the $22,025 that Husband removed from the marital accounts for non-marital purposes. Plaintiff's brief in support of her exceptions, at 3. After applying the relevant equitable distribution factors to the facts of the case, the master recommended that marital assets be allocated 55 percent to Wife and 45 percent to Husband; however, the master did not apply this allocation scheme to the marital assets Husband used for non-marital purposes. *Id.* at 4.

At the hearing, Husband acknowledged that during the marriage he utilized $22,025 of the parties' marital assets for non-marital purposes. Report at 7-8. In particular, Husband withdrew $10,000 from the parties' Prudential Retirement Account in order to loan money to his son from a previous marriage. *Id.* at 7. Husband also testified that he drew $12,025 on a line of credit from the parties' home equity loan in order to lend money to his daughter from a previous marriage. *Id.* at 8. In his report, the master concluded that half of the funds utilized by Husband for non-marital purposes were his, and the remainder belonged to Wife. *Id.* at 14. As a result, the master deducted one half of these assets, $11,012.50, from Husband's share of the equitable distribution, and increased Wife's share by the same amount. *Id.*

In Wife's second exception, she avers that the master erred in not awarding Wife 55 percent of Husband's pension. Plaintiff's brief in support of her exceptions, at 5. In his report, the master recommended that Husband's pension be divided equally between the parties. Report at 15-16.

Section 3502(a) of the Divorce Code clearly states that "[t]he court may consider each marital asset or group of

assets independently and apply a different percentage to each marital asset or group of assets." 23 Pa.C.S. §3502(a). In divorce proceedings, a trial court is under no obligation to distribute each individual asset according to a determined formula, as long as the scheme of distribution coincides with the court's decided-upon assessment. *Cerny v. Cerny,* 440 Pa. Super. 550, 556, 656 A.2d 507, 510 (1995).

After considering the distribution scheme in its entirety, it is evident that the overall scheme favors Wife. The master found a significant difference between the parties' incomes and awarded Wife 55 percent of the marital assets, resulting in an award of $184, 077.41. Report at 13-14. Additionally, Wife will receive $28,871.28 per year, which represents Wife's share of Husband's annual pension distribution. *Id.* at 15-16. The master also recommended that Wife receive rehabilitative alimony in the amount of $300 per month for the duration of one year. *Id.* at 18.

We do not find that the master altered the overall distribution scheme by applying a slightly different percentage to the marital assets used by Husband for non-marital purposes. Master awarded Wife 55 percent of the marital assets and then increased her equitable distribution share by $11,012.50 in order to compensate her for her half of the funds used by Husband for non-marital purposes. Wife's first exception is dismissed.

With regard to Husband's pension, Husband worked for 33 years in order to earn his pension; therefore, we do not find it unfair or unjust that the master decided to award Wife only 50 percent of this marital asset. As such, Wife's second exception is dismissed.

Wife's third exception is that the master erred in failing to recommend that Husband maintain a life insurance policy with her as the designated beneficiary. Plaintiff's brief in support of her exceptions, at 7. Husband chose to receive his pension under the Maximum Benefit Allowance. Plaintiff's exhibit no. 33. As a result, Husband's pension allowance is payable to him throughout his life; however, his pension will cease upon his death and there will be no subsequent allowance provided for any of his survivors. Plaintiff's exhibit no. 32. A post-retirement lump sum benefit will still be payable upon Husband's death to his designated beneficiary. *Id.* In his report, the master recommended that Husband's beneficiary be changed to reflect the couple's daughter. Report at 16.

Under section 3502(d) of the Divorce Code, a trial court "may direct the continued maintenance and beneficiary designations of existing policies insuring the life or health of either party which were originally purchased during the marriage and owned by or within the effective control of either party. Where it is *necessary* to protect the interests of a party, the court may also direct the purchase of, and beneficiary designations on, a policy insuring the life or health of either party." 23 Pa.C.S. §3502(d). (emphasis added)

The master took into account the disparity between the parties' incomes in fashioning an equitable distribution scheme that favored Wife. "Even if Wife were employed on a full-time basis, her income would probably be in the neighborhood of $25,000 per year, while Husband, on a part-time basis, earns $27,000 per year, and in all probability, could earn $60,000 to $80,000 per year

if he were re-employed on a full-time basis." Report at 13. However, the master also noted that, "It is clear from [Wife's] employment pattern, especially since the date of separation, that Wife, while capable of full-time employment and with no child care responsibilities in the residence because of the daughter's enrollment in college in Arizona, is severely under-employed." *Id.* at 12. The master awarded Wife rehabilitative alimony for one year, "which should give her sufficient time to find full-time employment. . . ." *Id.* at 18.

After reviewing the record and the report, we find that the master awarded Wife sufficient marital assets in light of the disparity between the parties' incomes. Wife has failed to establish the need for Husband to obtain a life insurance policy with her as a beneficiary.

Wife contends that the "master has again rewarded Husband by allowing him to reap the maximum pension benefit allowable during his lifetime with no corresponding obligation to Husband to purchase term life insurance to secure Wife's interest in this income stream." Plaintiff's brief in support of her exceptions, at 8. Wife's assertion fails to take into account that she is also rewarded by Husband's decision to receive the maximum pension benefit allowable since she is entitled to half of Husband's annual pension earnings during his lifetime. Wife's third exception is dismissed.

We shall now address Wife's fourth, fifth, eighth, and ninth exceptions concurrently since they all concern Wife's allegations that, during the parties' marriage, Husband withdrew funds from various marital accounts without her knowledge and subsequently used these funds for non-marital purposes. Wife's fourth exception is that

the master erred in not including in the marital estate the lump sum distribution that Husband received from his pension in the 2003 tax year. Plaintiff's brief in support of her exceptions, at 8.

At the hearing, Husband explained that throughout the marriage he borrowed money from his pension plan. N.T. at 144. Specifically, Husband borrowed approximately $12,000 from his pension in order to purchase the parties' timeshare in Virginia. *Id.* Husband further testified that every couple of years the parties would find themselves in need of money, and it was convenient for Husband to obtain the needed funds from his pension plan. *Id.* at 145. During the course of the parties' 22-year marriage, the small amounts that Husband borrowed from the pension plan gradually accumulated.

When Husband attained payment status on his pension, the total amount borrowed throughout the marriage, $41,319.88, was deducted from his pension. Report at 9. Due to the taxes involved for the liquidation of the funds, a 1099R was necessary. *Id.* The 1099R form that Husband received from the New York City Employees Retirement System for 2003 indicated that the $41,319.88 was a loan against the pension account. Defendant's exhibit no. 10. Contrary to Wife's assertion, Husband never received a lump sum distribution in 2003; rather, the amount indicated on the 1099R form was a tax liability incurred from removing funds from his pension throughout the parties' marriage.

In exceptions five, eight, and nine, Wife contends that the master erred in not including in the marital estate monies that Husband withdrew from certain marital accounts and allegedly used to pay marital debt and ex-

penses. Specifically, Wife avers that Husband removed $3,750 from a joint bank account, $7,000 from the American National Insurance Company account, and $6,000 from the Mass Mutual Joint Annuity. Plaintiff's brief in support of her exceptions, at 10-11, 16-17. At the hearing, Husband testified that he used these withdrawals to pay marital credit card debt. N.T. at 143.

After hearing extensive testimony from both parties regarding the various withdrawals made by Husband, the master determined that assets removed by Husband during the marriage were used for marital purposes, and he excluded all of these assets from the marital estate. "If a spouse uses marital funds to satisfy the parties' joint obligations, this constitutes a disposition in good faith and the spouse does not have to account for such marital funds. These marital funds are properly excluded from the marital estate." *Smith v. Smith,* 439 Pa. Super. 283, 305, 653 A.2d 1259, 1270 (1995).

Wife argues that Husband failed to prove that he used marital assets to satisfy marital debts since he did not comply with the best evidence rule.

"Despite Husband having the full ability to obtain documents to substantiate the disbursements of the pension funds, he has failed to do so. Husband did not produce any documentation to show when he obtained loans from the pension. Husband did not produce any documentation to evidence debt owed by the parties. Husband did not produce any cancelled checks or receipts to evidence payment of debt. Husband produced absolutely nothing but his own self-serving testimony that the money was used by him to pay marital debt." Plaintiff's brief in support of her exceptions, at 9-10.

"The 'best evidence' rule limits the method of proving the terms of a writing to the presentation of the original writing, where the terms of the instrument are material to the issue at hand, unless the original is shown to be unavailable through no fault of the proponent." *Warren v. Mosites Construction Co.,* 253 Pa. Super. 395, 402, 385 A.2d 397, 400 (1978). The Pennsylvania courts tend to use the "best evidence" rule when the contents of a document are directly at issue. *Id.*

In the instant case, the contents of a document were never material to the issue at hand; therefore, Wife's reliance on the best evidence rule is misplaced. The central issue before the master was whether Husband used the marital assets for legitimate marital purposes. Although Husband could have produced documentation, such as cancelled checks or receipts to prove that he used the borrowed funds for marital purposes, he was not restricted to that method of proof. At the hearing, Husband offered his recollections as to how the money was utilized as evidence that the withdrawals were used to satisfy joint obligations. Although it is true that documentary evidence may have been more persuasive, the best evidence rule does not mandate that Husband use the most persuasive evidence to prove his claim. *Banks v. Banks,* 275 Pa. Super. 439, 446 n.4, 418 A.2d 1370, 1374 n.4 (1980).

Since neither party produced any documentation to support his/her claims, the master was forced to make his determinations based solely upon the testimony of the parties. As such, the master's findings depended upon the credibility of the witnesses. "The master's report, although advisory only, is to be given the fullest consid-

eration as regards the credibility of witnesses whom he has seen and heard, and in this respect, his report should not be lightly disregarded." *D'Alessandro v. D'Alessandro,* 187 Pa. Super. 194, 197, 144 A.2d 445, 446 (1958), citing *Boyer v. Boyer,* 183 Pa. Super. 260, 263, 130 A.2d 265, 267 (1957).

In his report, the master thoroughly addressed the credibility of Husband's testimony regarding the withdrawals he made from marital assets.

"While defendant Husband was unable to supply a detailed itemization of the small loans that comprised the $41,000 sum, the master feels that what has happened is very similar to people drawing on a home equity line of credit—$2,000 here, $3,000 there and finally, after a number of years, a person realizes that the line needs to be liquidated.

"A review of the testimony of the defendant Husband, which was not shaken during cross-examination, leads the master to the conclusion that Husband's explanations for the various withdrawals from the investment vehicles are truthful and, for the most part, exceedingly logical." Report at 9.

As mentioned previously, Husband admitted that he loaned marital funds to his daughter and son from a previous marriage. Husband took full responsibility for his actions and acknowledged that Wife should not be held accountable for these loans. N.T. at 153, 155. With the exception of these two loans, the master found that Husband's "withdrawals from the investment vehicles were for marital purposes" and not an attempt to willfully dissipate the marital assets without Wife's knowledge. Report at 9.

Although the master was free to accept all of Husband's testimony, portions of his testimony, or none of his testimony regarding the use of the marital funds, the master chose to accept all of Husband's testimony as truthful. *Aletto v. Aletto,* 371 Pa. Super. 230, 242, 537 A.2d 1383, 1389 (1988). Although Wife made numerous allegations that Husband had removed marital funds for non-marital purposes, she produced no substantive evidence to support her claims. Wife's primary argument was that she was not aware that the couple had any marital debt; therefore, she did not believe that Husband used the withdrawals to pay such debts. Both parties' testimony revealed that "Husband basically controlled the family finances and Wife had very little input in regard to the same." Report at 10. It could be easily argued that the reason Wife was unaware of certain marital debts was not because they did not exist, but rather, because she did not take part in managing the family finances.

After reviewing the record and the report, we find that the master's decision to exclude the withdrawals from the marital estate was not an abuse of discretion. The master thoroughly considered the testimony presented by both parties and ultimately concluded that the marital assets were removed to satisfy marital obligations; therefore, he properly excluded the full amount of the withdrawals, $58,069.88, from the marital estate. Wife's fourth, fifth, eighth, and ninth exceptions are therefore dismissed.

Wife's sixth exception is that the master erred in failing to include in the marital estate the $10,000 that Husband allegedly used to pay their daughter's college tuition. At the hearing, Husband testified that he removed $10,000 from the parties' Prudential Retirement Account

in order to pay the parties' daughter's college tuition for the spring semester. N.T. at 135. According to Husband, he and Wife had discussed their daughter's educational expenses. *Id.* at 149. Husband testified that Wife was aware that he intended to use marital funds to pay for their daughter's college tuition. *Id.* However, Wife testified that she and Husband never discussed taking responsibility for their daughter's educational expenses and, it is her position, that she never would have agreed to Husband's use of the Prudential funds to pay their daughter's tuition. *Id.* at 122-23, 112-13.

Once again, the master was forced to make a determination based upon the credibility of the witnesses. After listening to Husband and Wife's contradicting testimony, the master accepted Husband's testimony on the matter.

Wife alleges that Husband provided no documentation to substantiate that he made a tuition payment. Plaintiff's brief in support of her exceptions, at 12. At the hearing, the master agreed to keep the record open for 30 days to allow Husband to produce documents to support some of his assertions, including his claim that he used the Prudential distribution to pay their daughter's college tuition. N.T. at 125. On April 24, 2005, Husband provided the master and Wife with a copy of the cancelled check issued to their daughter's college as evidence that he used the funds to pay her tuition.

After reviewing the evidence before the master, we agree with the master's determination that marital assets were used to pay an obligation that the couple had agreed to undertake; therefore, the master properly excluded the $10,000 from the marital estate. Wife's sixth exception is dismissed.

Wife's seventh exception is that the master erred in not including in the marital estate the money that Husband removed from the Prudential Retirement Account in order to pay the parties' 2003 income taxes. In or around April 2004, Husband received a net distribution of approximately $12,000 from the parties' Prudential account. N.T. at 57-58. Both Husband and Wife testified that this money was used to pay income taxes for the 2003 taxable year. N.T. at 109, 138-39.

In her brief, Wife contends that the tax liability was due, in part, to distributions Husband received and used for non-marital purposes. Plaintiff's brief in support of her exceptions, at 13. Specifically, Husband's son from a previous marriage needed $8,500 for his wife's upcoming oral surgery and he asked Husband if he could borrow the money from him. N.T. at 137. Husband borrowed $10,000 from the parties' Prudential Retirement Account in order to loan the money to his son. *Id.* Unfortunately, Husband's son defaulted on the loan and the default was treated as a distribution in the amount of $10,103. *Id.* at 137-38. Husband acknowledged that this loan was for a non-marital purpose and the master appropriately included this amount in the marital estate. *Id.* at 153.

Wife argues that she should not be responsible for the tax liability that was attributable to the $10,103 distribution, since it was used by Husband for non-marital purpose. Plaintiff's brief in support of her exceptions, at 13. Wife further contends that the portion of the marital funds used by Husband to pay the tax liability attributable to the distribution should have been included in the marital estate. *Id.* We agree with Wife's assertion that she should not be responsible; therefore, the portion of the marital

assets used to pay the tax liability on the distribution should have been included in the marital estate.

We will now determine the portion of the tax liability in 2003 that was attributable to the non-marital distribution. Husband's adjusted gross income for the 2003 taxable year was $122,483. Plaintiff's exhibit no. 34. In particular, $116,754 of Husband's income was from pension and annuity distributions. *Id.* Husband's form 1040 Worksheet indicates that Husband received a $41,320 distribution from his pension;[1] another $54,069 distribution from his pension; a $10,000 distribution from Prudential;[2] and a $10,103 distribution from Prudential. *Id.*

After Husband's itemized deductions were subtracted from his adjusted gross income, his taxable income in 2003 was $101,968. Plaintiff's exhibit no. 34. Based upon his taxable income, Husband owed the federal government $11,811 in taxes.[3] *Id.*

In order to determine what portion of the tax liability was due to the distribution used for non-marital purposes, we must first subtract the $10,103 distribution from Husband's taxable income. Husband's taxable income minus the distribution is $91,865. The amount of tax

---

1. As previously addressed in Wife's fourth exception, the $41,320 was a tax liability incurred from Husband's removal of funds from his pension throughout the marriage. We determined that the $41,320 was used by Husband for marital purposes; therefore, the total amount was excluded from the marital estate.

2. As previously addressed in Wife's sixth exception, the $10,000 was used by Husband to pay the parties' daughter's college tuition. We found that Husband used this distribution for a marital purpose; therefore, this distribution was also excluded from the marital estate.

3. This is the amount Husband owed after he subtracted the federal income taxes that had previously been withheld.

owed on $91,865, after subtracting the federal income taxes that had previously been withdrawn, is $9,009.25.[4] If we subtract $9,009.25 from the 2003 tax liability, the difference is the tax liability attributable to the distribution used for non-marital purposes. Therefore, the portion of the 2003 tax liability attributable to the non-marital distribution is $2,801.75. This amount is included in the marital estate and, as a result, Husband owes Wife $2,801.75. Wife's seventh exception is granted.

Wife's final exception is that the master erred in awarding Wife only one year of nominal monthly alimony. Plaintiff's brief in support of her exceptions, at 17. Wife argues that the master committed an abuse of discretion when he failed to appropriately consider the relevant factors enumerated in 23 Pa.C.S. §3701(b).

Alimony after the dissolution of a marriage is not an absolute right, but rather is discretionary in the court. *Grandovic v. Grandovic,* 387 Pa. Super. 619, 564 A.2d 960 (1989). The purpose of alimony is not to reward one party and punish another, but rather to ensure that the reasonable needs of a person who is unable to support himself or herself through appropriate employment are met. *Plitka v. Plitka,* 714 A.2d 1067, 1069 (Pa. Super. 1998), citing *Twilla v. Twilla,* 445 Pa. Super. 86, 90, 664 A.2d 1020, 1022 (1995). In determining whether alimony is

---

4. Since Husband's income is between $56,800 and $114,650, we begin by subtracting $56,800 from $91,865, which equals $35,065. *Revised 2003 Tax Rate Schedules,* Internal Revenue Service, Department of Treasury, available at http://www.irs.gov/formspubs/article/0,.id=109877,00.html. We then multiply $35,065 by 25 percent, which equals $8,766.25. *Id.* The 2003 tax rate schedule then instructs us to add $7,820 to the $8,766.25, which equals the amount of taxes Husband owed, $16,586.25. *Id.*

necessary and in determining the nature, amount, duration and manner of payment of alimony, a trial court must take into consideration the seventeen factors enumerated in section 3701 of the Divorce Code. 23 Pa.C.S. 3701.

After considering the factors in light of the specific circumstances of the instant case, the master determined that Wife was entitled to alimony in the amount of $300 per month for the duration of one year. The master's recommendation to award Wife alimony was largely based upon the inequality between the parties' earning capacities and sources of income. Report at 17. The master determined that one year of rehabilitative alimony would give Wife sufficient time to find full-time employment which would provide Wife with benefits. *Id.* at 18.

As previously noted, Husband's relative earnings and earning capacity are significantly higher than Wife's. If Husband continues to work part-time and receive his share of the annual pension earnings, he will receive approximately $56,000 per year. In his report, the master states that "Wife is grossly underemployed and is capable of earning approximately $25,000 per year if she were working full-time even as a receptionist. This combined with the division of the pension affords her an income stream of approximately $53,000 per year." Report at 18.

Wife disagrees with the earning capacity assigned to her by the master. During the course of the last 10 years, Wife has only held receptionist positions. "She has not earned more than $7 per hour and she has not worked more than 15 hours per week. Even if Wife was able to obtain full-time employment there is absolutely no evidence to support that she would be able to command more

than $7 per hour. This gives her an annual gross earning of approximately $14,500." Plaintiff's brief in support of her exceptions, at 18.

Although we agree with the master's determination that Wife is underemployed, we do not find that the record supports his assertion that Wife is capable of earning $25,000 per year; rather we are more persuaded by Wife's argument that she is capable of earning approximately $14,500.

In his report, the master also failed to take into consideration the length of the parties' marriage in determining the duration of Wife's alimony award. The parties have been married for 22 years. Wife testified that Husband preferred that she not be employed on a full-time basis; therefore, her work experience has been limited to sporadic part-time employment. N.T. at 118. "The parties were fortunate enough to be able to sustain themselves on Husband's income and a contribution by Wife to the income was simply not needed. As a result, she has not, and has not needed to pursue an education or training and has obtained a work history that most employers will not find appealing." Plaintiff's brief in support of her exceptions, at 18.

We agree with Wife's assertion that one year of alimony is insufficient; therefore, Wife's tenth exception is granted. Wife shall be awarded alimony in the amount of $400 per month for the duration of five years.

### ORDER

And now, November 4, 2005, upon consideration of Arlene M. Zegan's (Wife) exceptions to the master's re-

port and recommendations of May 2, 2005, we enter the following order:

(1) Alan G. Zegan (Husband) and Wife are divorced from the bonds of matrimony.

(2) Wife's seventh exception is granted. The $2,801.75 removed from the parties' Prudential account by Husband shall be included in the marital estate. As such, Husband shall pay Wife $2,801.75 within 90 days of the entry of this order.

(3) Wife's tenth exception is granted. Wife shall be awarded alimony in the amount of $400 per month for the duration of five years.

(4) Wife's first, second, third, fourth, fifth, sixth, eighth and ninth exceptions are dismissed.

(5) The remaining recommendations of the master are affirmed and the parties are directed to carry out the terms thereof.