J-A15012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SILVIA SANTO-BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BATTERMAN | : | |
| | : | |
| Appellant | : | No. 1258 EDA 2020 |

Appeal from the Order Entered February 20, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 17-01602,
PACSES Case No. 694116830

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 23, 2021**

Chad Batterman ("Father") appeals from the allocated support order entered on February 20, 2020, wherein the trial court denied, in part, his exceptions to the proposed support order directing him to pay $674.48 per month for the support of two children and $338.43 monthly for alimony *pendente lite* ("APL"*)* to Silvia Santo-Batterman ("Mother").[1]  We affirm. [2]

---

[1] Appellant timely filed his notice of appeal on June 9, 2020, in light of the First Judicial District of Pennsylvania President Judge Administrative Order No. 34 of 2020, which prolonged the emergency extension of time to June 15, 2020, as authorized by the Pennsylvania Supreme Court's Judicial Emergency order entered on May 27, 2020.

[2] As the order expressly allocated the support award between child support and APL, only the award of child support is immediately appealable.  **See Leister v. Leister**, 684 A.2d 192 (Pa.Super. 1996) (*en banc*) (APL is not appealable until all economic issues have been resolved by pending divorce
*(Footnote Continued Next Page)*

Mother and Father married on November 29, 2014, and separated three years later. The divorce is pending. Mother exercises primary physical custody and sole legal custody of the two children that were born of the marriage. As it relates to this appeal, Mother has sole authority over the selection of a daycare provider. Father exercises partial physical custody on alternating weekends and four hours of physical custody on the Thursday evening that precedes a non-custodial weekend.

In December 2017, Mother filed a complaint for child support.[3] The matter proceeded to a support master for evidentiary hearings pursuant to Pa.R.A.P. 1910.12 . On June 22, 2018, the trial court adopted the master's report and recommendation and entered a final child support order calculating Father's monthly child support obligation for the two children to be $686.00.

Approximately three months later, on October 1, 2018, Father filed a petition to modify the June 22, 2018 support order. During the ensuing evidentiary hearings, Father asserted, *inter alia*, that Mother should be assessed a full-time earning capacity of $19.00 per hour based upon her work experience and access to free child care. He also sought a downward deviation

---

decree). Thus, Father must defer his appeal of the portion of the order addressing the award of APL until after the economic claims are finalized.

[3] In addition to the child support claims, Mother and Father filed dueling petitions for APL. The trial court ultimately denied Father's entreaty and awarded Mother APL in the amount of $351.91 per month. **See** Support Order, 6/22/18. As noted, we do not address any aspect of the APL awards in this appeal.

from the guideline support obligation pursuant to Pa.R.C.P. 1910.16-5, based upon his substantial debt.

The support master rejected all aspects of Father's claims and issued a proposed order denying Father's motion for modification. Father timely filed exceptions challenging the master's failure to recognize a change in circumstances, Mother's earning capacity, and Father's debts. Upon review of Father's exceptions, the trial court granted Father's exception insofar as the court acknowledged a change in circumstances since May 2018, and remanded for further hearings before a new support master. *See* Trial Court Order 3/29/19, at 1. The court directed the new support master to assess the amount of Mother's earning capacity, consider Father's responsibility for the children's healthcare premiums, and receive additional evidence concerning the availability of free childcare at the paternal grandparents' daycare center. Finally, the court directed the support master to consider Father's significant debt beyond its effect on Father's employment or earning capacity, which the court determined not been affected. *Id*.

Following remand for the appointment of the new support master and additional evidentiary hearings, on September 23, 2019, the new support master assessed Mother a $350.00 monthly earning capacity and issued a proposed order that partially granted Father's petition to modify his existing child support obligations and reduced it to $674.48 per month effective April 29, 2019. Stated succinctly, the master determined that Mother's earning capacity in any field involving children was impeded by the litany of unresolved

- 3 -

allegations of child abuse that Father and the paternal grandmother had reported to Childline[4] implicating Mother as a perpetrator of child abuse, and that Mother's current earnings were restricted to intermittent catering jobs that she worked when she did not have physical custody of the children. The master also considered Mother's role as the nurturing parent and reduced Father's guideline support obligation by ten percent pursuant to Pa.R.C.P. 1910.16-5(b)(1) based upon his unusual fixed obligations, *i.e.* excessive debt.[5]

---

[4] ChildLine, a component of the Pennsylvania Department of Human Services, is part of a protective services program that is designed to accept child abuse referrals.

[5] Pa.R.C.P. 1910.16-5 relating to the deviation from support guidelines states:

> **(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
>
> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
> (1) unusual needs and unusual fixed obligations;
>
> (2) other support obligations of the parties;
>
> (3) other income in the household;
>
> (4) ages of the children;
>
> (5) the relative assets and liabilities of the parties;

*(Footnote Continued Next Page)*

Father timely filed exceptions challenging the calculation of his support obligation based upon Mother's imputed earning capacity of $350 per month as a part-time employee, the master's failure to consider Mother's access to free child care, his medical issues, or the significance of his extreme debt. He also asserted that the master misstated the effective date of the modified-support obligation as April 29, 2019, as opposed to the date that he filed the petition for modification. Upon review of Father's exceptions, the trial court entered the above-referenced order that adjusted the effective date of the modified support obligation to October 1, 2018, and adopted the substantive aspects of the master's recommendation. This timely appeal followed.

Father complied with Pa.R.C.P. 1925(b) raising several issues that he restates on appeal as follows:

> 1. The [trial court] committed revisable e[rr]or by imputing Mother's income at a mere $350.00 gross per month, instead [of] imputing Mother with a full[-]time earning capacity.

---

> (6) medical expenses not covered by insurance;
>
> (7) standard of living of the parties and their children;
>
> (8) in a spousal support or alimony pendente lite case, the duration of the marriage from the date of marriage to the date of final separation; and
>
> (9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(a),(b)(1)-(9).

2. The [trial court] committed reversible error by allowing Mother to rely upon the *Nurturing Parent Doctrine*, as Mother worked full time prior to and after the birth of the parties['] children and the [extended family members,] who previously cared for the children during that time, continue to be available to provide care while the parties are working.

3. The [trial court] committed reversible error by failing to consider the fact that Mother has full[-]time childcare, pre-school and summer camp options including door to door transportation available to her at no cost (and at a location within which Mother previously worked at for years, and which the children have previously and currently attended);

4. The [trial court] committed reversible error by failing to follow [a prior] March 29, 2019 order on remand, which gave Mother a full[-time] earning capacity.

5. The [trial court] committed reversible error by failing to deviate more than 10% downward in light of Father's extreme debt, which was accumulated during the course of the marriage;

6. The [trial court] committed reversible error by ignoring the fact that Paternal Grandfather offered Mother a full[-]time job at her pervious [sic] employer where Mother worked for years in a similar capacity as she had previously at a rate of [$]19/hr.

Father's brief at 2 (emphasis in original). Mother did not file a brief.

At the outset, we observe that, to the extent that Father asserts in his brief that the trial court erred in assessing his earning capacity of $36,000 in calculating his support obligation, an amount that he stipulated to during the master's hearing, that issue is waived because it was never raised in the trial court or the Rule 1925(b) statement. *See* Father's brief at 22-23 (arguing that the support order "must be overturned" due to his assessed earning capacity of $36,000 per year); Pa.R.C.P. 1910.12.(f) ("Matters not covered by exceptions are deemed waived[.]"); Pa.R.A.P. 302(a) (issues not raised in trial

court are waived and cannot be raised for the first time on appeal); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"). Accordingly, we do not address the merits of this issue.

We set forth our standard of review as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Summers v. Summers***, 35 A.3d 786, 788 (Pa.Super. 2012).

As all but one of Father's issues relate to the calculation and assessment of Mother's earning capacity, we begin with that component of Father's argument. Initially, we observe that, contrary to Father's protestations, the March 2019 trial court order that remanded the case for additional proceedings before a new support master **did not** direct that Mother be assessed an earning capacity commensurate with full-time employment. In reality, the court found that the prior support master erred in determining that Mother had **no** earning capacity. Indeed, the certified record bears out that the March 2019 order stated, "Mother has an earning capacity[, and that t]he Master should address and assess the amount of Mother's earning capacity." Order 3/29/19 at 1. Thus, in assessing Mother's earning capacity at $350.00 per

month in light of her employment constraints and irregular employment schedule, the support master complied with the remand order. As the record belies Father's assertion that the support master disregarded the March 2019 remand order, we reject Father's claim of error on this basis.

The crux of Father's remaining contentions relating to earning capacity is that the trial court erred in calculating Mother's earning capacity "at a mere $350 gross per month, instead [of] imputing . . . a full[-]time earning capacity." Father's brief at 24. He reasons that the sum does not account for the availability of childcare at his parent's facility and Mother's work experience and wages earned as a kindergarten teacher and customer service representative prior to the marriage and at the family's software firm during the marriage. *Id*. 24-25. He also asserts that the record does not sustain the conclusion that Mother cannot work in childcare based on his and paternal grandmother's several reports to ChildLine. *Id*. at 26.

Father makes additional references to Mother's work history in challenging the application of the nurturing parent doctrine, which recognizes the value of the custodial stay-at-home parent in calculating child support. As we previously reiterated, "In determining whether to expect a nurturing parent to seek employment, the trial court must balance factors such as the age and maturity of the child, the availability and adequacy of others who might assist the custodial parent, and the adequacy of available financial resources if the parent does remain at home." ***Kraisinger v. Kraisinger***,

928 A.2d 333, 342 (Pa.Super. 2007). Instantly Father asserts that the doctrine did not apply because Mother worked full time during the marriage, the older child is preparing to start kindergarten, Mother recently placed the children in daycare up to three days per week, and free daycare remains available to the children at paternal grandparents' facility. Father's brief at 26-28. Finally, Father contends that the trial court erred in ignoring a supposed offer from the paternal grandfather for Mother to work for him full time earning $19.00 per hour.

In sum, Father posits that Mother's prior work experience and salary range and her present job opportunities and availability of child care did not support the trial court's assessment of a diminished earning capacity. For the following reasons, we disagree.

Pursuant to Pa.R.C.P. 1910.16-2(d)(4), which permits the trial court to impute an income equal to a party's earning capacity, the trial court is directed to engage the following considerations:

> Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

After a thorough review of the certified record, Father's brief and the pertinent law, we discern no error of law or abuse of discretion on the part of the trial court as to Father's claims regarding the assessment of Mother's earning capacity and we affirm this aspect of the child support order on the basis of the cogent and well-reasoned analysis that the Honorable Diane Thompson provided in addressing these arguments in her opinion entered on October 19, 2020. *See* Trial Court Opinion, 10/19,20 at 8-17, 23-24.[6]

Specifically, Judge Thompson concluded, *inter alia,* that : 1) under the circumstances this case, the record supported the master's assessment of Mother's monthly earning capacity based upon the current constraints on her ability to work with children and her intermittent employment in the service industry when her children are not in her custody; 2) in accordance with the nurturing parent doctrine, Mother's value to the children as a stay-at-home parent offsets a portion of her support obligation given the age of the children and the parties' practice of having Mother act as the primary caretaker; 3) based upon the elevated level of conflict between Mother and the paternal grandparents, Father's offer of free child care at the grandparents' facility is hollow; and 4) the record does not support Father's assertion that the paternal grandfather offered Mother employment earning $19.00 per hour.

Accordingly, the certified record confirms that, upon considering the relevant factors enumerated in Pa.R.C.P. 1910.16-2(d)(4), the trial court

---

[6] To the extent that the trial court opinion addressed additional issues that Father did not assert on appeal, those matters are not before this Court.

reasoned that Mother's earning capacity should more accurately reflect her current circumstances, notwithstanding her employment history when the family was intact. As the trial court made its determination in light of Mother's training, work experience, earnings history and child care responsibilities as mandated by Rule 1910.16-2(d)(4), we find no basis to disturb it.

Finally, we address Father's argument that the trial court erred in failing to apply more than a ten percent discount to his guideline child support obligation based upon his extreme debt. Father reduced his entire argument to two points: (1) the ten percent reduction is insufficient in light of his assessed earning capacity of $36,000 per year; and (2) he "has testified in detail regarding the extreme debt he is in." Father's brief at 30. Father's argument is wholly inadequate. As previously noted, the assessment of his $36,000 annual earning capacity is not before this Court. Moreover, Father's bare contention that the ten percent deviation is an inadequate discount is not grounds to disturb the factfinder's determination that the deviation was, in fact, sufficient. No relief is due.

Having found both that Father was not entitled to an additional deviation from the support guidelines based upon his debt and that the certified record sustained the finding that the trial court complied with Rule 1910.16-2(d)(4) by stating the reasons for its assessment of Mother's $350.00 monthly earning capacity, we affirm the allocated support order as it relates to Father's child support obligation.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/23/2021</u>

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FAMILY COURT DIVISION

CHAD BATTERMAN, : TRIAL COURT DOCKET NO. 17-01602

APPELLANT, : PACSES CASE NO. 267116855

V. :

SILVIA SANTO-BATTERMAN, : SUPERIOR COURT OF PENNSYLVANIA

APPELLEE. : DOCKET NO. 1258 EDA 2020

## TRIAL COURT OPINION

Obligor Chad Batterman (hereinafter "Appellant"), appeals from a trial court order

entered on February 20, 2020, which granted, in part, and denied, in part, Appellant's

exceptions[1] to a proposed order entered by Master Wayne Bennett on September 23, 2019.

This court requests the Superior Court of Pennsylvania to affirm its order of February 20, 2020.

## PROCEDURAL HISTORY

On October 1, 2018, Appellant filed a *pro se* petition to modify an existing support

order[2], and requested that the trial court suspend his support payments without stating any

reasons for this request.[3]

---

[1] Appellant initially filed exceptions to Master Bennett's September 23, 2020, proposed order of support on October 11, 2019. Appellant then filed amended exceptions to the same proposed order of support on February 18, 2020, the same day at the judicial hearing on the exceptions he had filed on October 11, 2019.

[2] The previous support order was Master Bennett's proposed order of May 25, 2018, which granted Appellee's complaint for child support and *alimony pendent lite* (filed December 15, 2017) and denied Appellant's petition for *alimony pendent lite* (filed December 22, 2017). The same proposed order stated, in relevant part, that Appellant "is to pay $686.00 monthly for the support of two (2) children, [C.B.] and [D.B.]; $351.91 monthly in alimony pendent lite for the support of Obligee, plus $50.00 monthly toward the arrears and/or retroactivity." *See* Exhibit A, attached hereto. The proposed order dated May 25, 2018, was entered as a final order of court on June 22, 2018, as neither party filed exceptions.

[3] Pa.R.C.P. No. 1910.19(a) states that "a petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based."

1



On January 14, 2019, following a master's hearing which took place on December 6, 2018 (addressing Appellant's petition to modify an existing support order), Master Kristen Bozzuto, Esquire, entered a proposed order denying Appellant's October 1, 2018, petition.

On February 1, 2019, Appellant filed timely *pro se* exceptions to Master Bozzuto's January 14, 2019, proposed order, raising the following issues, verbatim:

1. The Master erred in finding that no change in circumstances have occurred since the May 2018 hearing and that Plaintiff/Mother continues to have no earning capacity;
2. The Master erred by applying the nurturing parent doctrine in determining that Plaintiff/Mother had no earning capacity;
3. The Master erred in failing to consider Defendant/Father's substantial and increasing debt and pending lawsuits as a barrier that presents Father from finding employment.

*See* Exhibit B, attached hereto.

On March 29, 2019[4], following a hearing on Appellant's exceptions, the Honorable Michael Fanning entered the following order:

Support exceptions filed on 2/4/19, by Defendant are granted in part and denied in part, as follows: the Court finds that there has been a change in circumstances since May 2018. The Court finds that Mother has an earning capacity. The Master should address and assess the amount of Mother's earning capacity. The Master should also consider the cost of the children's health care, as covered by Father. The Master shall also consider the availability of daycare for the children and should receive further evidence with regard to the cost and or the non-cost of the same. Further, the Master shall consider the substantial debt of Father, however, the Court does not find that said debt interfere with Father's ability to find employment/effect his earning capacity. Matter is remanded to a new Master, date certain, 5/8/19[5], at 9:00 a.m. before Master Bennett, 13th Floor, mail service to both parties and counsel.

See Exhibit D, attached hereto.

---

[4] This same day, the same day the hearing on his exceptions (filed February 4, 2019) was scheduled, Appellant filed amended exceptions which repeated the same claims as his February 4, 2019, exceptions but added the following issue, verbatim: "The Master erred in failing to consider Father is paying for children's healthcare." *See* Exhibit C, attached hereto.

[5] This hearing date was continued and took place before Master Bennett on June 12, 2019.

2

On April 24, 2019, Appellant, despite being represented by counsel and despite already having an open petition to modify an existing support order, filed a *pro se* petition to modify an existing support order which again asked the court to suspend Appellant's support payments.[6]

Pursuant to Judge Fanning's order of March 29, 2019, hearings were held on Appellant's October 1, 2018 petition to modify before Master Wayne Bennett on June 12, 2019 and September 11, 2019. At these hearings both Appellant and Appellee testified and evidence was presented. On September 23, 2019, Master Bennett entered a proposed order stating the following, verbatim:

> The petition to modify filed on 04/29/19 shall be hereby granted, as a slight modification of the support order shall be warranted at this time. The obligor shall pay $674.48 monthly for the support of two children and $333.43 monthly for the support of spouse, Silvia, for a total order amount of $1,007.91 monthly. The obligor shall pay $50 monthly for the arrears owed. The effective date of this order shall be 04/29/19. Amend wage attachments forthwith.

*See* Exhibit E, attached hereto.

On October 11, 2019, Appellant filed timely *pro se*[7] exceptions to Master Bennett's proposed order of September 23, 2019, raising the following issues, verbatim:

> 1. The Master erred in finding that the effective for the Order of Support was April 24, 2019 when in fact the underlying Petition to Modify was filed on October 1, 2018 and any proposed order of support should be retroactively applied from October 1, 2018 through the entry of the new interim order of support. Not only does this directly impact Father's retroactive arrears credit, but it also impacts the health insurance coverage expense and unreimbursed medical percentages of each party and any credit/s related thereto;

---

[6] This filing created some confusion in the upcoming hearings (June 12, 2019 and September 11, 2019) on Appellant's October 1, 2018 petition for modification of an existing support order. This is evident in the contrast between Master Bennet's proposed order of September 23, 2019, which states "the petition to modify filed on 04/29/19 shall be hereby granted" and Master Bennett's master's report from September 23, 2019, which states that the hearings were on Appellant's "petition to modify filed on 10/8/18."

[7] Appellant was represented by counsel at the time.

2. The Master erred by concluding that Mother's earning $350 gross per month through her limited hours working for a catering company was a reasonable or appropriate earning capacity;

3. The Master erred by failing to attribute/impute Mother with a full time earning capacity in light of the fact that she had full time child care/pre-school/summer camp options available to her at no cost;

4. The Master erred in failing to recognize that Mother has free childcare available to her at all times and as a result she is able to work and earn substantially more income than $350 gross per month;

5. The Master erred in failing to consider Father's attempts to file for modification of support in the period in which his October 1, 2018 Petition to Modify was pending as well as his medical issues impacting his ability to work;

6. The master erred in failing to deviate more than 10% downward in light of Father's extreme debt;

7. The Master erred in failing to limit the duration of the *Alimony Pendente Lite* Order in favor of Mother based upon the limited duration of the parties' marriage and Mother's failure to timely prosecute the divorce action.

*See* Exhibit F, attached hereto.

On February 20, 2020, following a hearing on February 18, 2020, on Appellant's

exceptions, filed October 11, 2019, to Master Bennett's proposed order of September 23, 2019,

the undersigned trial court judge entered the following order:

Obligor's exceptions to the proposed order issued by Master Bennett, Esquire on 09/23/2019, and timely filed by obligor on 10/11/2019, are granted in part and denied in part following a hearing. This court thoroughly reviewed Master Bennett's report, calculations, findings, notes of testimony, and exhibits. Master erred in the filing date of the obligor's petition to modify support. Filing date is 10/01/2018, as indicated in the docket. The remaining exceptions to the proposed order of support are denied. The proposed order of support shall be made a final order effective 10/01/2018. Obligor shall pay $674.48 monthly for support of two children and $333.43 monthly for support (APL) of spouse, Silvia, for a total order amount of $1007.91 monthly. Obligor shall pay $50 monthly for arrears owed. Effective date October 1, 2018. Amend obligor's wage attachments forthwith.

*See* Exhibit G, attached hereto.

4

On June 10, 2020, Appellant filed this timely[8] notice of appeal of the trial court's final order of February 20, 2020. In his statement of matters complained of on appeal, filed simultaneously with his notice of appeal, Appellant raised the following issues, verbatim:

1. The Judge committed revisable [sic] error by imputing Mother's income at a mere $350.00 gross per month, instead of imputing Mother with a full time earning capacity.

2. The Judge committed reversible error by allowing Mother to rely upon the *Nurturing Parent Doctrine*, as Mother worked full time prior to and after the birth of the parties children (and only stopped upon parties' separation), and the parties' families who previously cared for the children during that time, continue to be available to provide care while the parents are working.

3. The judge committed reversible error by failing to consider the fact that Mother has full time childcare, pre-school, and summer camp options including door to door transportation available to her at no cost (and at a location within which Mother previously worked at for years, and which the children have previously and currently attended).

4. The Judge committed reversible error by failing to limit the duration of the *Alimony Pendente Lite* order in favor of Mother based upon the limited duration of the parties' marriage and Mother's failure to timely prosecute the divorce action.

5. The Judge committed reversible error by failing to follow Judge Fanning's March 29, 2019 order on remand, which gave Mother a full earning capacity.

6. The Judge committed reversible error failing to deviate more than 10% downward in light of Father's extreme debt, which was accumulated during the course of the marriage;

7. The Judge committed reversible error by failing to consider Father's attempts to file for modification and/or suspension of support in the period in which his October 1, 2018 Petition to Modify was pending as well as his medical issues impacting his ability to work.

8. The Judge committed reversible error by ignoring the fact that Paternal Grandfather offered Mother a full time job at her previous employer where Mother worked for years in a similar capacity as she had previously at a rate of $19/hour.

---

[8] Paragraph 4 of President Judge Idee Fox's Administrative Order No. 24 of 2020, addressing court closure due to COVDID-19, states the following: Suspension of Time Requirements: The suspension of time requirements, time limitations, or filing deadlines imposed by this Court's Orders in connection with the Judicial emergency will expire. Legal papers or pleadings required to be filed between March 16, 2020 and June 15, 2020 shall be deemed to have been filed timely if they are filed by the close of business on June 15, 2020.

9.     The Judge committed reversible error by failing to use the February 12, 2018 custody order, when Father had Shared Legal Custody of both children and instead used a more recent custody order and went outside the 4 corners of Father's original petition.

*See* Exhibit H, attached hereto.

On July 20, 2020, the Pennsylvania Superior Court issued the following rule to show cause to Appellant, verbatim:

Appellant has filed this appeal from the February 20, 2020 allocated child and alimony pendent lite ("APL")/spousal support order. First, this appeal appears to be untimely. See Pa.R.A.P. 903 (a) (notice of appeal shall be filed within 30 days after order is entered on the trial court docket); Pa.R.A.P. 108(b) (date of entry of an order shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)); *Valley Forge Center Assoc. v. Rib-It/K.P., Inc.,* 693 A.2d 242 (Pa. Super. 1997) (this Court is without jurisdiction to excuse the failure to file a timely notice of appeal as the 30-day period for appeal must be strictly construed; untimely appeal divests this Court of jurisdiction). Instantly, review of the PACSES docket reveals that the order was entered the same date, February 20, 2020. Thus, the appeal was required to be filed within thirty (30) days of February 20, 2020. However, since the thirtieth day was Saturday, March 21, 2020, the appeal was required to be filed no later than Monday, March 23, 2020. See Pa.R.A.P. Note (Pa.R.A.P. 107 incorporates by reference the rules of construction of the Statute Construction Act of 1972, 1 Pa.C.S. §§1901-1991. 1 Pa.C.S. §1908(2) provides for the omission of the last day of time which falls on Saturday, Sunday or legal holiday). However, due to the Judicial Emergency in the State of Pennsylvania, the date to file appellant's notice of appeal was extended by Superior Court order until May 11, 2020 and then further extended by the Philadelphia Court of Common Pleas order of April 22, 2020, that extended the Judicial emergency "through close of business on May 29, 2020." See In re: Continuation Of Judicial Emergency order of April 22, 2020. Thus, appellant was required to file his appeal on Monday, June 1, 2020 the date the Philadelphia trial court reopened. Nevertheless, the appeal was not filed until June 10, 2020, nine (9) days late. As a result, it does not appear that this Court has jurisdiction over the February 20, 2020 order. Second, even if the appeal had been timely filed, it does not appear that the APL/spousal support portion of the order would be appealable because there does not appear to be a divorce decree nor equitable distribution order entered on the divorce docket. Indeed, the last entry on the divorce docket is dated November 1, 2018. See Pa. R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties); *Leister v. Leister,* 684 A.2d 192 (Pa. Super. 1996) (the difference between spousal support and alimony pendente lite claims , no matter if filed as part of a divorce action or separately, is negligible,

6

and neither is appealable until all economic issues have been resolved); *Fried v. Fried*, 501 A.2d 211 (Pa. 1985) (issues are reviewable after entry of divorce decree and resolution of all economic issues). Accordingly, appellant is directed to respond within ten (10) days, in writing and copy all parties involved on your reply, as to the timeliness of the appeal and the appealability of the APL/spousal support portion of the February 20th order. Failure to respond to this directive may result in dismissal or quashal of this appeal without further notice.

*See* Exhibit I, attached hereto.

Appellant responded to the Pennsylvania Superior Court's July 20, 2020 rule to show cause on July 30, 2020. On July 31, 2020, the Pennsylvania Superior Court issued the following order discharging their July 20, 2020 rule to show cause, verbatim:

> In accordance with the Rule to Show Cause order filed on July 20, 2020 and Appellant's responses, only the child support portion of the order will be referred to the panel assigned to decide the merits of this appeal. The APL portion of the order will only be appealable after both entry of the divorce decree and resolution of all economic claims. See Pa. R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties); *Leister v. Leister*, 684 A.2d 192 (Pa. Super. 1996) (the difference between spousal support and alimony pendente lite claims , no matter if filed as part of a divorce action or separately, is negligible, and neither is appealable until all economic issues have been resolved); *Fried v. Fried*, 501 A.2d 211 (Pa. 1985) (issues are reviewable after entry of divorce decree and resolution of all economic issues); *Hrinkevich v. Hrinkevich*, 676 A.2d 237 (Pa. Super. 1996) (notwithstanding pending divorce action child support orders are immediately reviewable). Moreover, in light of the Pennsylvania Supreme Court's Judicial Emergency May 27, 2020 Order paragraph two (2) providing that even though the statewide judicial emergency shall cease as of June 1, 2020, the local emergency orders shall remain in full force and effect, and appellant's response that the First Judicial District Of Pennsylvania President Judge Administrative Order No, 34 of 2020 In re: Family Court. Resumption of Operations. Update Protocols. Order of May 15, 2020 paragraph four (4) directs: Suspension of Time Requirements. The suspension of time requirements or filing deadlines imposed by this Court's Orders in connection with the Judicial Emergency will expire. Legal papers or pleadings required to be filed between March 16, 2020 and June 15, 2020 shall be deemed to have been filed timely if they are filed by the close of business on June 15, 2020. Accordingly, the Rule is discharged. However, appellant is advised that the issues may be revisited by the panel assigned to decide the merits of this case and both should be prepared to address, in appellant's brief or at the time of oral argument, any concerns the panel may have concerning the jurisdictional

7

issues raised by this Court's Rule To Show Cause order. Please note that this is not a final determination as to the propriety of the appeal.
*See* Exhibit J, attached hereto.

ANALYSIS

This court concurs with the findings of the support master's report regarding the issues raised by the Appellant on appeal and does not find that Master Bennett committed any errors of law or reason.

The standard of review for support orders on appeal is gross abuse of discretion. The Pennsylvania Superior Court has stated:

> The amount of a support order is largely within the discretion of the trial court, whose judgement should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgement, but rather a misapplication of the law or an unreasonable exercise in judgement. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. *Kessler v. Helmick,* 449 Pa. Super. 113, 672 A.2d 1380, 1382 (1996) (quoting *Griffin v. Griffin,* 384 Pa. Super. 188, 558 A.2d 75, 77 (1989) (*en banc* )). For our purposes, 'an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.' *Portugal v. Portugal,* 798 A.2d 246, 249 (Pa. Super. 2002)

*See also Dennis v. Whitney,* 844 A.2d 1267, 1269 (Pa. Super. 2004), holding that:

> A child support order will not be disturbed on appeal unless a trial court failed to consider properly requirements of rules of civil procedure governing actions for support or abused its discretion in applying rules; an "abuse of discretion" is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, discretion is abused.

Additionally, the trial court may rely on the findings of the support master's report when determining if a party's claims on appeal are valid. "A master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly

8

on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011) (citing *Moran v. Moran*, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citing *Simeone v. Simeone*, 380 Pa.Super. 37, 551 A.2d 219, 225 (1988), *aff'd*, 525 Pa. 392, 581 A.2d 162 (1990)).

## ISSUE I

**The Judge committed revisable [sic] error by imputing Mother's income at a mere $350.00 gross per month, instead of imputing Mother with a full time earning capacity.**

No abuse of discretion occurred when the trial court accepted the Master's finding that Appellee's earning capacity is $350.00 per month. On March 29, 2019, the Honorable Michael Fanning remanded, in part, Appellant's exceptions to Master Wayne Bennett, ordering that "the Court finds that Mother has an earning capacity. The Master should address and assess the amount of Mother's earning capacity." *See* Exhibit D, attached hereto. After hearing extensive testimony from both Appellant and Appellee at hearings on June 12, 2019, and on September 10, 2019, Master Bennet's concluded the following in his master's report of September 23, 2019:

> Based upon the totality of the circumstances, and all relevant and appropriate factors such as the child-care situation, it is found **that the Obligee has no additional earning capacity at this time**. The master calculated the Obligee's **actual income** from her current employer ($94.50 weekly) for support guidelines purposes. This is due to the age of the subject children, the Obligee's prior work experience, and the Obligee's current child care situation. The Obligee worked in the past while managing her child care situation, but the Obligee was previously in a unique situation as the co-owner of a business with the Obligor, and that situation no longer exists. (*emphasis added*)

*See* Exhibit E, attached hereto, at p. 5.

9

At the February 18, 2020, hearing on Appellant's exceptions to Master Bennett's proposed order of September 23, 2019, this court heard extensive evidence from Appellant's attorney that added nothing new to the testimony that was given by both Appellant and Appellee at the master's hearings on June 12, 2019, and September 10, 2019. As she had at the master's hearings, at the February 18, 2020, hearing Appellee testified that she had sought work in child-care but that was made near impossible as Appellant and his mother reported Appellee for child abuse 17 times. N.T. 02/18/20, p. 61, ll. 18-25, p. 62, ll. 1-5.

Master Bennett's finding Appellee's earning capacity to be $350 a month was based on the catering jobs Appellee takes when she does not have custody of the children. Appellee testified that she has an app that alerts her when caterings jobs are available and she takes jobs when she does not have custody. N.T. 06/12/19, p. 16, ll. 10-25, p. 16, ll. 1-20. No abuse of discretion occurred when the trial court concurred with the master's finding that Appellee has a monthly income of $350.

## ISSUE II

**The Judge committed reversible error by allowing Mother to rely upon the *Nurturing Parent Doctrine*, as Mother worked full time prior to and after the birth of the parties children (and only stopped upon parties' separation), and the parties' families who previously cared for the children during that time, continue to be available to provide care while the parents are working.**

The trial court did not commit an abuse of discretion in allowing Appellee to rely on the nurturing parent doctrine. "The nurturing parent doctrine recognizes that a custodial parent who stays at home and cares for a child does, in fact, support the child; in determining whether to expect a nurturing parent to seek employment, the trial court must balance factors such as the age and maturity of the child, the availability and adequacy of others who might assist the

10

custodial parent, and the adequacy of available financial resources if the parent does remain at home." *Kraisinger v. Kraisinger*, 928 A.2d 333. 342 (2007). *See also Frankenfield v. Feeser*, 672 A.2d 1347, 1352 (Pa. Super. 1996): "While trial court in determining parent's ability to pay child support must primarily focus on earning capacity rather than actual earnings, court is free to consider making exception to rule whenever parent chooses to stay home with minor child, so long as relevant factors are considered."

According to the parties' current custody order of May 3, 2019 (*See* Exhibit K, attached hereto), Appellee has primary physical and sole legal custody of the two subject children. Appellant's custody is outlined as follows: "Father shall have partial physical custody of the children from Thursday at 4:00 p.m. until Monday at 9:00 a.m. on the first, third, and fifth (in months with five Saturday) weekends of the month. On weeks in which Father will not have weekend custody, Father shall have additional partial physical custody on Thursday from 4:00 p.m. to 8 p.m." *Id.*

Master Bennett's report of September 23, 2019, states the following: "The Master finds for the Obligee on the issue of placement in child-care at this time, as given the age[9] of the subject children and other factors such as the determination made in custody proceedings, the Master does not find that he has the authority to change what has been the ongoing practice between the parties at this time. In keeping with the previous findings by Master Bozzuto, the Master again hereby finds that it is in the best interest of the subject children if the Obligee

---

[9] The children were born on October 20, 2015 (C.B.) and October 10, 2017 (D.B.), making them three years old and one year old, respectively, at the time of the September 23, 2019 master's hearing.

11

continues her current child-care arrangements." Master's Report of 09/23/2019 at p. 5. *See* Exhibit E, attached hereto.

No abuse of discretion occurred in allowing Appellee to rely on the nurturing parent doctrine.

Regarding Appellant's claim that Appellee worked full time prior to and after the birth of the parties' children, the testimony tells a different story. Appellee testified that while she did work for Appellant's business during the course of their marriage (from 2014 to 2017), she was never compensated:

| | |
|---|---|
| Appellee's Counsel: | Okay. Um, then after 2011, when you were working at the school, where did you become next employed at? |
| Appellee: | Wait. So then I started working for my family's (inaudible), just trying to – we were married and decided to help him with his business. He needed assistance. |
| Appellee's Counsel: | And what was your, um, wages that you – when you were hired by him to come to this – |
| Appellee: | Zero. |
| Appellee's Counsel: | And when did you – when did you start – when did you start receiving wages? |
| Appellee: | I never did. |
| Appellee's Counsel: | Did you receive a W-2? |
| Appellee: | No. |
| Appellee's Counsel: | Receive a 1099? |
| Appellee: | I did not. |
| Appellee's Counsel: | Did you receive cash payments? |
| Appellee: | No. |

N.T. 06/12/19 at pp. 35-37.

Additionally, it was established on cross-examination of Appellant by counsel for Appellee that, prior to working full time for no compensation for Appellant's business and prior to having children, Appellee was working as a substitute teacher for $85 a day:

| | |
|---|---|
| Appellee's Counsel: | Okay. And you're – based upon the records that |

12

|  |  |
|---|---|
|  | you were able to dig up when she worked for Council Rock, she was making about 10, 15 an hour? |
| Appellant: | No, that's not correct. |
| Appellee's Counsel: | She was making $85 a day. |
| Appellant: | I don't know if that's when she was a full-time substitute or that the per diem. There were two different salaries that were – sorry, two different checks that were submitted, one was when she was a full-time substitute for (inaudible) Elementary School, the other one was when she was on per diem per day. I believe she was at $115 or $120 a day when she was a full-time substitute. When she was not full-time, she was $85 a day. I don't know what that breaks down to hourly. |
| Appellee's Counsel: | And she stopped working so that she could support you in your business? |
| Appellant: | She we could – correct, start business venture and work full time. |
| Appellee's Counsel: | Well, once she started working full time, you never added as an owner to the business, right? Let me ask this. What – how's the – how is your – your business set up? Is it a LLC, an S-Corp (phonetic)? |
| Appellant: | Uh, I don't recall off the top of my head. |
| Appellee's Counsel: | Each one of those, though it's not self – sole proprietorship, correct? |
| Appellant: | No, it's not. |
| Appellee's counsel: | Okay. So when you – when she started working full time, five, six days, you never added her as a member to the LLC or as a shareholder to the S-Corp, correct? |
| Appellant: | She never wanted any - any part of it. |
| Appellee's Counsel: | Okay. And she worked at least 40 hours or she was there at least 40 hours a week? |
| Appellant: | Right, five, six days a week with – |
| Appellee's Counsel: | And you would agree with that – that the earning capacity she earned while with you was probably a good earning capacity for the court to consider, correct? |
| Appellant: | Incorrect. It's the same as mine was. |
| Appellee's Counsel: | Okay. So how much did she earn in two – what was her W2 for 2013? |
| Appellant: | She's already testified to Master Bennett. However, um, we are at both (inaudible). Uh, Silvia |

13

|                      |                                                                                                                                                                                                          |
|----------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                      | was compensated in other ways, such as paying all of her bills, uh, her cell phone, her college loan, uh, our family vehicle, her half –                                                                  |
| Appellee's Counsel:  | So how much was that?                                                                                                                                                                                     |
| Appellant:           | Thousands of do – thousands of dollars a month and I have credit card statements that we submitted previously –                                                                                           |
| Appellant's Counsel: | Slow down.                                                                                                                                                                                                |
| Appellant:           | - that – that will reinforce that the credit cards that Silvia (inaudible) early were for her personal, and there was some business on her personal credit cards, not all business.                        |
| Appellee's Counsel:  | Can you estimate how much of the money that was used to support her, uh, for purposes of an equivalent salary? I understand that you took money out of the business to pay –                               |
| Appellant:           | Well, we were supporting –                                                                                                                                                                                |
| Appellee's Counsel   | - your rent, right?                                                                                                                                                                                       |
| Appellant:           | - we were supporting ourselves with – with – with – with the rent and the car payments so -                                                                                                               |
| Appellee's Counsel:  | So if you – if you divide that in half, how much was on behalf of Silvia?                                                                                                                                 |
| Appellant:           | I'd have to – I don't have that (inaudible) in front of me.                                                                                                                                               |

N.T. 09/11/19 at pp. 168-172.

Further illuminating the nature of her work experience during their marriage, Appellee's relevant testimony during the February 18, 2020, hearing on Appellant's exceptions went as follows:

|           |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                |
|-----------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Appellee: | Yeah, It's correct, I was a teacher. I was a per diem substitute teacher up until 2011. 2011, Chad wanted me to quit to help him with his start up, at which time I did through marriage help him with his start up. I was compensated zero dollars for my work there. Once the children were born, my 4-year-old now first, I did work at the company in and out. It was a 10-minute walk. I exclusively breastfed her, so I would either bring her to the office with me for a few hours and work from home, as well. My mother and his mother would also come to watch them for a few hours. I would go to the office, come home, they would leave. Those were the arrangements made. |

14

|              | Both mothers never watched both children. When I left, I had a one-month old and a 2-year-old. So both mothers – |
| The Court:   | When you left, what? Your – |
| Appellee:    | When I left – |
| The Court:   | - job? |
| Appellee:    | - the marriage. |
| The Court:   | Okay. |
| Appellee:    | Yeah. They were never watched – they never watched two children alone. Because at that time, I was also breastfeeding exclusively my newborn. So when Chad says that I was at the office, I was, with a newborn attached to me with a playpen at the office. So that was the job arrangements. I was in and out feeding and then I would run home with the child at all times. They were never watching the two children at that time. Obviously, our plans changed as we got married and had kids. There – after I left, there was no support given by Chad. |

N.T. 02/18/20 at pp. 57-58.

Because the last time that Appellee worked as a teacher was as a substitute teacher paid on a per-diem basis in 2011, it was reasonable for Master Bennett not to include this work experience as part of Appellee's contemporary earning capacity. As the record reveals, Appellee's work experience as a teacher was in 2011, three years prior to the parties' marriage, and Appellee was never employed as a full-time teacher. N.T. 09/11/20 at p. 49, ll. 3-4.

With regards to Appellant's statement that the parties' families are allegedly available to take care of the children so that the parties can work full time, this element to the instant issue is moot. No members of the parties' families are parties to this support action nor the parties' custody action. No relatives of either Appellant or Appellee testified at any of the hearings relevant to the instant appeal about their willingness or availability in terms of caring for the parties' children. As such, this element of this issue will not be considered.

15

**The judge committed reversible error by failing to consider the fact that Mother has full time childcare, pre-school, and summer camp options including door to door transportation available to her at no cost (and at a location within which Mother previously worked at for years, and which the children have previously and currently attended).**

No abuse of discretion occurred because the trial court, as well as Master Bennett, did consider the fact that Appellee has full time child-care, pre-school, and summer camp options including door to door transportation available to her at no cost at facilities owned and operated by Appellant and his family.

Appellant testified that, when the children are in his custody, he does take them to his family's camps and educational facilities. N.T. 09/11/19, pp. 86-87. However, the following exchange occurred during the master's hearing on June 12, 2019:

| Appellee's Counsel: | Now, with respect to, uh, childcare, you heard Mr. Steerman, uh, in his opening arguments, as well as in prior hearings that, uh, father's daycares are, uh, open for – for you to send the kids free of charge so you can work, earn money (inaudible) and that childcare, and that will be through the entire year. |
|---|---|
| Appellee: | Correct. |
| Appellee's Counsel: | And have you accepted that offer? |
| Appellee: | No. |
| Appellee's Counsel: | Why not? |
| Appellee: | Um, this is just a really extremely high conflict[10], um, custody, divorce, um, everything. So, it's been |

---

[10] To illustrate the contentious nature of the parties' custody proceedings, their current custody order of May 3, 2019, in case number 0C1701602, states that "Paternal Grandmother shall not be within one-hundred (100) feet of any custody exchange" and that "Father has committed numerous violations of prior interim custody orders and is cautioned that this custody order must be complied with. Violations of the order may result in civil contempt sanctions, including but not limited to fines, attorney's fees, and incarceration. Father is reminded that withholding the children from Mother, repeated lateness to custody exchanges, and name-calling during custody exchanges shall be considered violations of this order." Additionally, between the dates of February 12, 2018, and May 3, 2019, a total of sixteen orders were entered in 0C1701602 that addressed issues of custody between the parties. This number does not include the numerous administrative orders that were also entered in that time period.

| | |
|---|---|
| | really difficult to deal with Chad a – as well as his parents and he's become – he's been found in contempt numerous times. Um, his parents have been involved in a lot of the situations where they left, um, in the vehicle with my children. They've, um, admitted to holding on to my children despite a court order telling them to release them to me. Um, there's been warrants, he's been found in contempt, he's been charged, he's been – " |
| Appellee's Counsel: | When you say charged, what do you mean charged? |
| Appellee: | Uh, sorry, I – attorney fees as well as court fines. I – at least $17,000 at this point, um, dollars and, um, uh, uh, his time's been suspended with the children. Just all of those that have led up to where the court order is now and giving me legal. I just don't feel it's a stable environment for the children. I just – I'm looking for something neutral. |

N.T. 06/12/19 at pp. 43-45.

Additionally, the following exchange occurred at the trial court's hearing on February 18, 2020:

| | |
|---|---|
| The Court: | Can you respond to the argument that Father sets forth that you have free child care available to you? |
| Appellee: | Right. I have sole legal custody of the children. Besides this, there is a very high conflict custody case still happening. So his family, who owns that school, is also involved. |

N.T. 02/18/20 at p. 64, ll. 6-15.

No abuse of discretion occurred because the trial court did, in fact, consider the factors that Appellant is alleging the court did not consider.

## ISSUE IV
**The Judge committed reversible error by failing to limit the duration of the *Alimony Pendente Lite* order in favor of Mother based upon the limited duration of the parties' marriage and Mother's failure to timely prosecute the divorce action.**

17

Pursuant to the Pennsylvania Superior Court's order of July 31, 2020, which discharged

their July 20, 2020 rule to show cause, issues concerning *alimony pendente lite* will not be

considered on this appeal:

> In accordance with the Rule to Show Cause order filed on July 20, 2020 and
> Appellant's responses, only the child support portion of the order will be
> referred to the panel assigned to decide the merits of this appeal. The APL
> portion of the order will only be appealable after both entry of the divorce
> decree and resolution of all economic claims. See Pa. R.A.P. 341(b)(1) (a final
> order is any order that disposes of all claims and of all parties); *Leister v. Leister,*
> 684 A.2d 192 (Pa. Super. 1996) (the difference between spousal support and
> alimony pendente lite claims , no matter if filed as part of a divorce action or
> separately, is negligible, and neither is appealable until all economic issues have
> been resolved); *Fried v. Fried,* 501 A.2d 211 (Pa. 1985) (issues are reviewable
> after entry of divorce decree and resolution of all economic issues); *Hrinkevich v.*
> *Hrinkevich,* 676 A.2d 237 (Pa. Super. 1996) (notwithstanding pending divorce
> action child support orders are immediately reviewable).

*See* Exhibit J, attached hereto.

## ISSUE V
**The Judge committed reversible error by failing to follow Judge Fanning's March 29, 2019 order on remand, which gave Mother a full earning capacity.**

The trial court did not commit an abuse of discretion because Judge Fanning's March 29,

2019, order remanding Appellant's exceptions to Master Bennett did not give Appellee "full

earning capacity." Judge Fanning's March 29, 2019, order states the following, verbatim:

> Support exceptions filed on 2/4/19, by Defendant are granted in part and denied
> in part, as follows: the Court finds that there has been a change in circumstances
> since May 2018. **The Court finds that Mother has an earning capacity. The**
> **Master should address and assess the amount of Mother's earning capacity.**
> The Master should also consider the cost of the children's health care, as
> covered by Father. The Master shall also consider the availability of daycare for
> the children and should receive further evidence with regard to the cost and or
> the non-cost of the same. Further, the Master shall consider the substantial debt
> of Father, however, the Court does not find that said debt interfere with Father's
> ability to find employment/effect his earning capacity. Matter is remanded to a

18

new Master, date certain, 5/8/19[11], at 9:00 a.m. before Master Bennett, 13th
Floor, mail service to both parties and counsel. *(Emphasis added.)*
*See* Exhibit D, attached hereto.

Judge Fanning found that mother had an earning capacity and directed Master Bennett

to assess the amount of that earning capacity. Master Bennett assessed that amount,

reasonably, at $350 a month. It is not the trial court's jurisdiction to determine the earning

capacity.

## ISSUE VI
**The Judge committed reversible error failing to deviate more than 10% downward in light of Father's extreme debt, which was accumulated during the course of the marriage**

No abuse of discretion occurred because the Master deviated just 10% downward in

Appellant's support obligation due to Appellant's debt. The trial court determined that the

Master did not err in the amount of deviation. Pa.R.C.P. No. 1910.16-5 states the following:

(a) Deviation. If the amount of support deviates from the amount
of support determined by the guidelines, the trier of fact shall specify, in writing
or on the record, the guideline amount of support, and the reasons for, and
findings of fact justifying, the amount of the deviation.
> *Note:* The deviation applies to the amount of the support obligation and
> not to the amount of income.
(b) Factors. In deciding whether to deviate from the amount
of support determined by the guidelines, the trier of fact shall consider:
> (1) unusual needs and unusual fixed obligations;
> (2) other support obligations of the parties;
> (3) other income in the household;
> (4) ages of the children;
> (5) the relative assets and liabilities of the parties;
> (6) medical expenses not covered by insurance;
> (7) standard of living of the parties and their children;
> (8) in a spousal support or *alimony pendente lite* case, the duration of the
> marriage from the date of marriage to the date of final separation; and

---

[11] This hearing date was continued and took place in front of Master Bennett on June 12, 2019.

(9) other relevant and appropriate factors, including the best interests of the child or children.

Master Bennett heard testimony about Appellant's debt at the September 11, 2019, master's hearing, including this exchange:

Appellant's Counsel: Okay. Now, can you tell Master Bennett, um, what your current status is with regard to debt that you owe?

Appellant: Um, it's about at least under $800,000. Um, I was recently informed that there is another lawsuit as of a month ago pending against me with Bank of America or Cap – Bank (inaudible) for Capital One. Um, I'm – haven't been served that, so I'm not aware of it, but whenever there's a lawsuit, you get - you get the letters from (inaudible), the lawyers for defense. As that's how I'm aware of that. So that's two more, um – two more lawsuits. Um, there are an exuberant amount of – between attorneys' bills and every other type of bill, um – there's – regarding the debtness (*sic*).

Appellant's Counsel: You answered (inaudible). And you previously produced documentation that was referenced by Master Bozzuto in her prior hearings, correct?

Appellant: Yes.

Appellant's Counsel: And, uh, has there been any substantial changes in regards to the amount of debt that you had back in, uh, May of 2018 and December – but really just December of 2018?

Appellant: Yes.

Appellant's Counsel: What, if anything, has changed other than what you've just testified about?

Appellant: The le – well, six to December?

Appellant's Counsel: Yes.

Appellant: Um, the two – the two new lawsuits –

Appellant's Counsel: Okay.

Appellant: - that are there. Um, then there was – I believe there's an – it's probably – I – I came up under $80,000 worth of debt that, you know, in order to pay counsel, you know, each counsel for each lawsuit case, they're asking for $10,000 retainers. That's another $20,000 that I do not have. Um, and there's no income that I am making.

N.T. 09/11/19 at pp. 102-103.

20

Details about Appellant's debts became decidedly less clear on cross examination:

| | |
|---|---|
| Appellee's Counsel: | How much was the most recent loan you got from you father? |
| Appellant: | I don't recall. |
| Appellee's Counsel: | Do you have the loan documents? Do you have any loan document between your parents and you? |
| Appellant: | They were sub – they were submitted I believe May of 2018, the loan documents. |
| Appellee's Counsel: | And is it – is it an open loan? |
| Appellant: | I don't – how do I know? |
| Appellee's Counsel: | Like a – like the – a, uh, home equity line of credit, like, you have $100,000 and you can tap it whenever you want to. |
| Appellant: | It's whatever the loan document says. It's got the number of the loan. |
| Appellee's Counsel: | You don't know? |
| Appellant: | I don't recall. |
| Appellee's Counsel: | You're up to you think $800,000. Is that just the indebtedness to your family or is that including credit cards and everything else? |
| Appellant: | I don't recall the breakdown, but I know it was testified to previously. |
| Appellee's Counsel: | I'm asking you now, sir. |
| Appellant: | And I'm explaining to, I was prepared when I testified to answer that question, and I'm not prepared to answer that question. |
| Appellee's Counsel: | You – this order is for the court to consider the substantial debt of Father – |
| Appellant: | Right. |
| Appellee's Counsel: | - which is what you testified to previously? |
| Appellant: | Well, you're asking me questions I don't – |
| Appellee's Counsel: | You renamed [sic] it for the master to consider the substantial that [sic] of Father. Did you come with any updated documents as to this alleged $800,000 debt? |
| Appellant: | I believe it was submitted previously – |
| Appellee's Counsel: | So the answer's no. |
| Appellant: | No. |

N.T. 09/11/19 at pp. 183-85.

21

Despite Appellant failure to produce any exhibits related to the debt he testified to at either master's hearing, Master Bennett found Appellant credible and stated the following in his Master's Report of September 23, 2019:

> The amount of fixed obligations and needs of the Obligor are so unusual or extraordinary as to warrant a downwards deviation from the support guidelines at this time pursuant to Rule 1910.16-5(b)(1). Pursuant to his Honor's Order the Master considered the Obligor's substantial debts and obligations, and found the Obligor's testimony with this issue to be credible. While these debts to [sic] not override the Obligor's child support obligations, the Master hereby finds that a downwards deviation of 10% on the child support order and 10% on the spousal support order is warranted at this time.

See Exhibit E, attached hereto, at p. 7.

No abuse of discretion occurred when the trial court accepted Master Bennett's reasoning and application of a downward deviation to Appellant's support obligation in the amount of 10%.

**ISSUE VII**
**The Judge committed reversible error by failing to consider Father's attempts to file for modification and/or suspension of support in the period in which his October 1, 2018 Petition to Modify was pending as well as his medical issues impacting his ability to work.**

The trial court committed no abuse of discretion with regards to this issue. According to the docket, Appellant filed additional petitions to modify on April 24, 2019, and November 6, 2019. Regardless, however many petitions to modify an existing support order Appellant filed while a petition to modify an existing support order was already pending is not relevant to the instant appeal. The November 6, 2019, petition raised the issue of alleged disabilities that have impacted Appellant's ability to work, but the initial master's hearing on that petition was not until March 10, 2020, which is after February 20, 2020, the date of the order from which this

22

appeal was taken. No exhibits were presented regarding Appellant's alleged inability to work at any of the hearings relevant to this instant matter and the only testimony went as follows:

> Appellant's Counsel: And when you say you're not working currently, what, if anything, prevents you from working currently?
>
> Appellant: Um, the injuries that I've had since January of 2019. I've been attempting file, uh, change in circumstances, but the, um, division here will not allow me to file that, and amendment to that until – as this hearing was passed – this hearing was pending, um, and then the drugs pending – hearing was pending. So I've had, uh, two different accidents that have – that have affected me in my ability to work as well as verified doctor, physician, or physician verification forms, um, numerous MRIs, numerous physical therapy appointments –
>
> Appellee's Counsel: Just – we would – we would – on the record, this is not an issue for the court.
>
> Appellant's Counsel: I'll move on.

N.T. 09/11/19 at pp. 104-105.

This issue is not proper for consideration in the instant appeal.

## ISSUE VIII
**The Judge committed reversible error by ignoring the fact that Paternal Grandfather offered Mother a full time job at her previous employer where Mother worked for years in a similar capacity as she had previously at a rate of $19/hour.**

No abuse of discretion occurred with regards to this issue because no testimony was ever offered with regards to Paternal Grandfather's offering Appellee a job at the rate of $19.00 an hour. Paternal Grandfather never testified at any hearing relevant to this appeal.

Additionally, Appellee never testified that she was ever paid $19 an hour by Appellant's family.

Testimony regarding Appellee getting paid $19 an hour by Appellant's family was limited to the following:

23

Appellant: She always needed to work, um, cause she needed money as did I. Uh, she worked, uh, as a full time substitute teacher at (inaudible) Elementary for a year as well as I believe one of the – another elementary school in Newtown. Um, she also worked for our school, uh, the Wonder – (inaudible) school, the Wonderkey School in Blue Bell, Pennsylvania for a year as the kindergarten teacher, full-time kindergarten teacher, and, uh, which she was – (inaudible) she was getting at least $19 an hour, and she also worked, um for our – um, my family's camps, Sesame Rockwood Camps. Uh, she did social media, she did marketing, digital marketing, uh, e-mail, graphic design, uh, customer service, uh, uh, database management, such as Filemaker Pro, and graphic design, such as, uh, Adobe Acrobat, InDesign, um, and, um, uh, Photoshop. So when – when she – when we were working together, she worked for my company, she's work five or six days a week with me.

N.T. 09/11/19 at pp. 74-75.

Appellant presented no evidence to support his claim of the $19.00 an hour job offer or to support his testimony about Appellee being paid that much in the past by his family. Master Bennett acknowledged Appellant's testimony in his report from September 23, 2019 (*See* Exhibit E, attached hereto, at p. 5: "The Obligor testified under direct questioning that the Obligee worked for his parents' company doing various things such as marketing, graphic designing, etc., and that she was earning as much as $18 an hour."), but concluded the following:

Based upon the totality of the circumstances, and all relevant and appropriate factors such as the child-care situation, it is found that the Obligee has no additional earning capacity at this time. The master calculated the Obligee's actual income from her current employer ($94.50 weekly) for support guidelines purposes. This is due to the age of the subject children, the Obligee's prior work experience, and the Obligee's current child care situation. The Obligee worked in the past while managing her child care situation, but the Obligee was previously in a unique situation as the co-owner of a business with the Obligor, and that situation no longer exists.

*Id.*

24

No abuse of discretion occurred where no evidence of a job offer to Appellee was presented for the trial court to consider.

## ISSUE IX
**The Judge committed reversible error by failing to use the February 12, 2018 custody order, when Father had Shared Legal Custody of both children and instead used a more recent custody order and went outside the 4 corners of Father's original petition.**

The trial court did not commit an abuse of discretion because the February 12, 2018, custody order was not relevant to Appellant's petition to modify an existing support order filed on October 1, 2018. At the time of the master's hearings on June 12, 2019, and September 11, 2019, a final custody order (including full discussion of custody factors pursuant to 23 Pa.C.S. § 5328) granting Appellee sole legal custody had been in effect as of May 4, 2019. This is the order that was relevant to Master Bennett's proposed support order of September 23, 2019. This court did not go outside of the "four corners" of Appellant's original petition to modify support.

## CONCLUSION

For the foregoing reasons, this court requests the Superior Court of Pennsylvania to dismiss Appellant's appeal and to affirm the trial court's final support order of February 20, 2020.

BY THE COURT:

DATE: _October 19, 2020_

_Diane Thompson_
DIANE THOMPSON, J.

25